UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELE ELLEN SCALPI,

                       Plaintiff,

     v.

TOWN OF EAST FISHKILL, OFFICER
TINA AMORIM, SERGEANT ERIC
FIELDS, FREDERICK D. ROMIG,
COUNTY OF DUTCHESS, WILLIAM
GRADY, MELISSA KNAPP PASQUALE,
COUNTY OF ORANGE, COMMISSIONER
BARBARA J. FIALA, GOVERNOR
ANDREW CUOMO, STEVEN K.
PATTERSON,

                     Defendants.

Case No. 14-CV-2126 (KMK)

OPINION & ORDER

Appearances:

Michelle Ellen Scalpi
West Haven, CT
*Pro se Plaintiff*

Jeremy M. Sher, Esq.
Leclair Korona Giordano Cole LLP
Rochester, NY
*Counsel for Defendants Town of East Fishkill, Officer Maria Amorim, Sergeant Eric Fields, and
Town Justice Frederick D. Romig*

KENNETH M. KARAS, District Judge:

     Michelle Ellen Scalpi ("Plaintiff"), proceeding pro se, filed the instant Amended

Complaint pursuant to 42 U.S.C. § 1983, alleging the Town of East Fishkill ("Town"), Officer

Maria Amorim ("Amorim"), Sergeant Eric Fields ("Fields"), and Town Justice Frederick D.

Romig ("Justice Romig") (collectively, "Moving Defendants"), among other defendants, violated

her constitutional rights.  Before the Court is Moving Defendants' Motion To Dismiss the

Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). For the following reasons, the Motion is granted in part and denied in part.

I. Background

A. Factual Background

The factual allegations that follow are derived from Plaintiff's Amended Complaint. While the Court will sometimes refer to Plaintiff's contentions as "alleged," it nonetheless treats them as true for purposes of the instant Motion.

Plaintiff "was pulled over [in] February of 2011" for driving without a license on a public roadway in the Town, in violation of New York State Vehicle and Traffic Law ("VTL") § 511. (Am. Compl. 8 (Dkt. No. 75); *see also id.* Ex. E (VTL § 511).)[1] She claims that her arrest and subsequent prosecution were intrinsically invalid because the state law imposing the driver's license requirement is invalid. (*See, e.g.*, *id.* at 17–18 ("Without an enacting clause the laws referenced . . . have no official evidence that they are from an authority which the individual is subject to or required to obey." (italics omitted)).) During the course of the criminal prosecution stemming from this charge, Plaintiff failed to appear for a required court appearance on April 24, 2013 at the Town of East Fishkill Court, which resulted in the issuance of a bench warrant for her arrest, signed by Justice Romig. (*Id.* at 9.)

On March 17, 2014, Plaintiff was driving in Columbia County, New York when she was pulled over and arrested pursuant to that bench warrant. (*Id.* at 8–9.) After being "transported to an unknown location off the Taconic State Parkway," Plaintiff was searched by Amorim in a "rough and excessive" manner that involved the placement of Amorim's hands on Plaintiff's breasts, upper thighs, and genital area. (*Id.* at 9.) She allegedly "felt pain as [Amorim] ran her

---

[1] For the sake of clarity, the Court cites to the page numbers of Plaintiff's Amended Complaint, rather than the inconsistent paragraph numbering.

hand up [Plaintiff's] leg and hit [Plaintiff's] gentile [sic] area with force." (*Id.*) At no point did Plaintiff receive *Miranda* warnings. (*Id.*)

Upon arriving at the East Fishkill Police Station ("Station"), Plaintiff requested to use the bathroom facilities, and, though her request was initially denied, Amorim later "granted permission reluctantly." (*Id.* at 9–10.) When Amorim went to remove the handcuffs, Plaintiff suffered "extreme shooting pain in [her] left shoulder" as Amorim twisted her left arm, forcing it to the side, and quickly pushing it upwards. (*Id.* at 10.) Plaintiff "spoke up in pain," telling Amorim, "'you are going to break my arm.'" (*Id.*) Fields allegedly witnessed this incident but "did nothing to correct Amorim and help [Plaintiff]." (*Id.* at 32.)

When Plaintiff went to use the bathroom, she voiced concerns that the door was kept open such that "male officers could clearly see in," but Amorim responded that "'no one will see you.'" (*Id.* at 10.) Plaintiff subsequently "noticed evidence of menstrual cycle happening" and requested but was repeatedly denied a sanitary napkin. (*Id.* at 10–11.) Amorim advised that she was "'not equipped with those things,'" so Plaintiff would "'have to ball up toilet paper'" instead. (*Id.*) Plaintiff was also denied water, despite "complaining of dizziness and dehydration," until just prior to leaving the Station to be "released into the custody of the New York State Troopers." (*Id.* at 11.)

Plaintiff "was then transported to Montgomery NYS Trooper Barracks" for "another warrant from the Town of Newburgh Court," also relating to a prior violation of VTL § 511. (*Id.*) There, she was again allegedly denied water, food, use of bathroom facilities, and a sanitary napkin. (*Id.* at 11–12.) Plaintiff subsequently was taken to the Town of Newburgh Court, where she was "granted bail of $400.00." (*Id.* at 12.) However, she was not allowed to post bail at the courthouse, despite having "family in court with bail in hand," and instead was

sent to the Orange County Jail ("Jail"). (*Id.*) Plaintiff requested water and use of the bathroom, but these requests were denied. (*Id.*) Eventually, Plaintiff was granted permission to use the bathroom facilities, having explained she was in pain "from holding it for hours." (*Id.*) Plaintiff also complained of a painful "burning sensation in [her] gentile [sic] area." (*Id.*) Though her appeals were "denied several times," she ultimately received a sanitary napkin from a female corrections officer at the Jail. (*Id.* at 12–13.)

According to the Amended Complaint, Plaintiff sat in a "holding cell with no toilet paper, . . . food, water[,] or medical care for [her] gentile [sic] area, dizziness[,] or hurt shoulder" for several hours until her release from the Jail. (*Id.* at 13.) In the subsequent days, Plaintiff visited the hospital twice, saw her primary care physician, and went to two orthopedic specialists to address "[v]aginal pain, shoulder pain[,] and dehydration." (*Id.* at 13, 15.)[2]

B. Procedural History

Plaintiff commenced the instant Action on March 26, 2014 against Orange County, Dutchess County, Dutchess County District Attorney William Grady, Dutchess County Assistant District Attorney Melissa Knapp Pasquale, the Town, Amorim, Fields, Justice Romig, Commissioner Barbara J. Fiala, Governor Andrew Cuomo, and Steven K. Patterson. (Dkt. No. 1.) Thereafter, counsel for all named defendants filed motions to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b). (Dkt. Nos. 40, 42, 47, 52.) Without rendering a decision on these motions, the Court granted Plaintiff's request for leave to amend her Complaint. (Dkt. Nos. 72, 74.) Plaintiff accordingly filed her Amended Complaint on December 31, 2014. (Dkt. No. 75.)

---

[2] Plaintiff's appearance before the Town of Newburgh Court and subsequent detention at the Jail do not implicate Moving Defendants. The Court describes these factual allegations merely by way of background.

Pursuant to a scheduling order adopted at a pre-motion conference held before the Court on March 10, 2015, (Dkt. No. 88), Moving Defendants filed their Motion To Dismiss and supporting papers on April 8, 2015, (Dkt. Nos. 91–94), Plaintiff filed her opposition papers on June 1, 2015, (Dkt. No. 110), and Moving Defendants filed their Reply Memorandum of Law on June 22, 2015, (Dkt. No. 117).[3]

## II. Discussion

### A. Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alterations and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a

---

[3] The Court resolves the Motions to Dismiss of the other named defendants in separate Opinions issued contemporaneously with this Opinion.

context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In addition, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [her] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). In

6

deciding a motion to dismiss a pro se complaint, it is appropriate to consider certain "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to [her] opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B. Analysis

Plaintiff broadly asserts a variety of constitutional claims against the individual and municipal defendants named in the Amended Complaint. (*See* Am. Compl. 2.) As for Moving Defendants specifically, she alleges that (i) the Town enforced an invalid law, (*see id.* at 22), and failed to train its employees, (*see id.* at 29); (ii) Justice Romig improperly allowed for the enforcement of that allegedly invalid law and wrongfully signed a warrant authorizing Plaintiff's arrest, (*see id.* at 31, 48); (iii) Amorim falsely arrested Plaintiff, (*see id.* at 47), failed to provide *Miranda* warnings, (*see id.* at 9), searched Plaintiff in an unreasonable manner, (*see id.* at 2, 47), subjected Plaintiff to excessive force, (*see id.* at 26), and deprived Plaintiff of various necessities, (*see id.* at 30–31); and (iv) Fields ordered the false arrest of Plaintiff, (*see id.* at 88), failed to

intervene when Amorim used excessive force against her, (*see id.* at 47), and deprived Plaintiff of various necessities, (*see id.* at 88).  Moving Defendants argue for dismissal of the Amended Complaint, with the exception of Plaintiff's excessive force claim against Amorim, on the basis that the allegations contained therein fail to state a claim upon which relief can be granted.  (*See* Defs.' Mem. of Law in Support of Mot. ("Defs.' Mem.") 8 (Dkt. No. 94.).)

      1.  <u>Claims against the Town</u>

As noted, Plaintiff's claims against the Town pertain to its enforcement of the allegedly invalid VTL § 511, (*see* Am. Compl. 17–22), and its purported failure to train and supervise its employees, (*see id.* at 22–30).  Yet, the allegations against this "municipal entity on New York State territory," (*id.* at 5), cannot survive the instant Motion because the Amended Complaint fails to satisfy the requirements of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

A municipal defendant "cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691 (italics omitted); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (reaffirming that "a municipality cannot be held liable on a respondeat superior basis for the tort of its employee" (italics omitted)).  Rather, for a plaintiff to prevail on a § 1983 claim against a municipal employer, she must satisfy the requirements set forth in *Monell* and its progeny, which adhere to the well-settled principle that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691; *see also Hunter v. City of N.Y.*, 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("In order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or

8

custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). In addition, a plaintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury" (internal quotation marks omitted)); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation" (internal quotation marks omitted)); *Johnson v. City of N.Y.*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that "a plaintiff must establish a causal connection—an affirmative link—between the [municipal] policy and the deprivation of his [or her] constitutional rights" (internal quotation marks omitted)).

"Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Tieman*, 2015 WL 1379652, at *12 (alterations and internal quotation marks omitted); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not

sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom·and the alleged unconstitutional violation.").

Construed liberally, the Amended Complaint alleges two theories of liability that seek to satisfy the "policy and custom" requirement: (a) the Town had a formal policy "to [v]iolate clearly established law"; and (b) the Town failed to properly train its employees. (*See* Am. Compl. 23, 26.)

 a. Formal Policy

Although Plaintiff complains of the Town's "custom, policy, or practice" of depriving individuals of their rights, (*id.* at 23), she fails to present sufficient facts of any formal policy or custom that could satisfy the requirements of *Monell*.[4]

On one hand, Plaintiff appears to allege VTL § 511 as the municipal policy giving rise to the purported violations of her constitutional rights. (*See id.* at 29 ("The policy or custom in which the municipality acted on is unconstitutional on its face." (citing Ex. F (Plaintiff's DMV Abstract)).) According to the Amended Complaint, the Town is responsible for "knowingly pursuing an [i]ndividual without law or jurisdiction." (*Id.* at 75.) Yet, as noted in separate

---

[4] To the extent Plaintiff seeks to establish liability against the Town "under the "[d]octrine of [r]espondent [sic] [s]uperior for the acts of [its] employees committed within the scope of their employee duties," (Am. Compl. 23 (italics omitted)), this assertion is unavailing. As noted above, it is well established that "a municipality cannot be held liable solely for the acts of others," *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 36 (2010); *see also Jones*, 691 F.3d at 80, a point that Plaintiff seems to concede, at least in part, (*see* Pl.'s Opp'n to Mot. ("Pl.'s Opp'n") at unnumbered 3 (Dkt. No. 110) ("It is true under the [d]octrine of *Monell*[] [that] [r]espondeat [s]uperior in most cases cannot impose liability on a municipality . . . ." (italics added))).

opinions relating to this Action, the bill that became VTL § 511 had an Enacting Clause and thus was properly enacted. *See* 2006 Sess. Law News of N.Y. ch. 746 ("The People of the State of New York, represented in Senate and Assembly, do enact as follows . . . "). Moreover, VTL § 511 was well within the state's authority to regulate the use of its roads. *See, e.g., Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 523 (1959) ("The power of the State to regulate the use of its highways is broad and pervasive."); *Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999) (reaffirming that an individual "does not have a fundamental right to drive a motor vehicle"); *Triemert v. Washington Cty.*, No. 13-CV-1312, 2013 WL 6729260, at *9 (D. Minn. Dec. 19, 2013) ("It is beyond dispute that states may impose driver licensing and vehicle registration requirements upon their citizens . . . ."), *aff'd*, 571 F. App'x 509 (8th Cir. 2014); *see also Gaebel v. N.Y. State Dep't of Motor Vehicles*, 976 N.Y.S.2d 816, 826 (Sup. Ct. 2013) (reaffirming that "the state may regulate the right to drive and the possession of a driver's license in the furtherance of highway safety and to protect against potential injury to the public").[5] Accordingly, the Town's enforcement of VTL § 511 does not constitute a policy of constitutional deprivation and therefore cannot support municipal liability.

Plaintiff separately alleges that "[i]t seems to be the custom and policy of the Town . . . to allow detainees to suffer non-emergency medical issues no matter how severe and withhold necessities." (Am. Compl. 48.) Her allegations in this regard all focus on the alleged conduct of

---

[5] While conceding that "[t]he State of New York has every right to regulate commercial driving," (Am. Compl. 80), Plaintiff contends she "does not and has never been in possession of a driver[']s license to give subject matter over her in a commercial capacity," (Pl.'s Opp'n at unnumbered 1 (alterations omitted).). However, her fanciful reliance on this distinction is misguided, for "[t]he Supreme Court has held that states may constitutionally regulate the use of public highways" without limiting "its holding to commercial uses of public highways." *Mohammed El v. Opdyke*, No. 04-CV-1459, 2004 WL 1465692, at *3 (N.D. Cal. June 23, 2004) (citing *Reitz v. Mealey*, 314 U.S. 33, 36 (1941), *overruled in part on other grounds by Perez v. Campbell*, 402 U.S. 637 (1971)).

Amorim and Fields, (*see, e.g., id.* at 88 ("Fields . . . supervised Amorim as [Plaintiff] was

harmed and left without water and deprived sanitary needs.")), but "[a] *Monell* claim cannot go

forward based on conclusory claims regarding a single incident without more evidence that

connects this incident to a municipal policy or practice," *Pittman v. City of N.Y.*, No. 14-CV-

4140, 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30, 2014). Aside from the bare assertion of the

existence of a "custom and policy," the Amended Complaint fails to plead any facts to support

an inference that the Town should be held liable for the alleged constitutional violations that

occurred at the Station. *See Gordon v. City of N.Y.*, No. 10-CV-5148, 2012 WL 1068023, at *4

(E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the "allegation is unsupported by

anything other than the facts of what occurred in his particular case"). Plaintiff's conclusory

statement, based only on the claims in this particular case, is thus insufficient to sustain a *Monell*

claim. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 124 (2d Cir. 1991) (affirming "that an

allegation of municipal policy or custom would be insufficient if wholly conclusory"); *Maynard

v. City of N.Y.*, No. 13-CV-3412, 2013 WL 6667681, at *4 (S.D.N.Y. Dec. 17, 2013)

("Conclusory allegations that there was such a policy or custom, without identifying or alleging

supporting facts, is insufficient to state a claim."); *5 Borough Pawn, LLC v. City of N.Y.*, 640 F.

Supp. 2d 268, 299 (S.D.N.Y. 2009) (concluding that the "plaintiffs' pleading . . . does not unlock

the doors of discovery because their assertion that the [c]ity has an unconstitutional policy is

based on nothing more than their unsupported supposition" (citation and internal quotation marks

omitted)).

Along these lines, Plaintiff's mere assertion that the "Town . . . [has] displayed patterns

depicted in each and every Cause of Action herein," (Am. Compl. 74), cannot support municipal

liability in the absence of detailed allegations about any municipal policy or custom, *see Barr v.*

*Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (holding that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"); *5 Borough Pawn*, 640 F. Supp. 2d at 300 (dismissing *Monell* claim where the "plaintiffs fail to allege any facts showing that there is a [c]ity policy—unspoken or otherwise— that violates the Federal Constitution").

The Court, therefore, finds that Plaintiff has failed to plead a plausible claim of municipal policy or custom that caused the constitutional violations Plaintiff alleges.

### b. Failure to Train

In a separate effort to satisfy the requirements of *Monell*, Plaintiff broadly alleges that the Town "failed and/or neglected to properly train and supervise its employees," including "its [p]olice [o]fficers" and "[m]unicipal [j]udges." (Am. Compl. 22.) Relatedly, Plaintiff asserts that the Town is "liable for improper training, licensing [its employees] to abuse the public at will with no sense of compassion or liability." (*Id.* at 23.) Plaintiff also claims that "[l]ack of training [led] to deprivation of secured rights, violation of civil rights, . . . bodily injuries[,] and deprivation of medical and essential needs." (Pl.'s Opp'n at unnumbered 2.)

To hold the Town liable under § 1983 for an alleged failure to train and/or supervise, Plaintiff must plausibly alleges that the Town's failure to train "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Walker v. City of N.Y.*, 974 F.2d 293, 297 (2d. Cir. 1992) (internal quotation marks omitted). This "stringent standard of fault" requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Plaintiff's conclusory allegations fail to meet her heavy burden here. Simply put, Plaintiff provides no details to substantiate her claims of inadequate training and/or supervision. *See Tieman*, 2015 WL 1379652, at *13 ("[M]ere allegations of . . . inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom [or policy] unless supported by factual details."); *Johnson*, 2011 WL 666161, at *4 (finding the plaintiff's "unsupported conclusory allegation that the [c]ity failed to train the individual [d]efendants" insufficient to establish municipality liability; *Bradley v. City of N.Y.*, No. 08-CV-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The [c]omplaint's conclusory, boilerplate language—that the [c]ity 'failed to adequately train, discipline, and supervise' employees and 'failed to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees—is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused [the] [p]laintiff to be arrested without probable cause." (alterations and citation omitted)). The Amended Complaint lacks any allegations that the Town was on notice of other similar constitutional violations and, in the face of such notice, failed to act. *See Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (requiring that a plaintiff "allege that the [municipality] was on 'notice that a course of training is deficient in a particular respect'" in order to hold the municipality liable for a failure to train its employees (quoting *Connick*, 563 U.S. at 62)). Indeed, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," *Connick*, 563 U.S. at 62 (internal quotation marks omitted), but here Plaintiff alleges no such pattern on the part of Town employees.

As the only support for this failure-to-train claim, Plaintiff contends in her opposition papers that "[i]t is unrealistic under the circumstances that Amorim or Fields were trained in use

14

of force, non[-]emergency medical needs, violation of civil rights[,] or depriving general needs

of persons in custody." (Pl.'s Opp'n at unnumbered 3.) Yet, "without providing any supporting

factual detail about alleged deficiencies in the training program, or regarding other instances of

police misconduct which could be attributed to a failure to train," *Triano*, 895 F. Supp. 2d at 539,

such boilerplate language of the Amended Complaint lacks "sufficient factual matter . . . to state

a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (internal quotation marks

omitted); *see also Simms v. City of N.Y.*, No. 10-CV-3420, 2011 WL 4543051, at *2 (E.D.N.Y.

Sept. 28, 2011) ("[A] claim based on this [failure-to-train] theory still must be properly pled

under *Iqbal*."), *aff'd*, 480 F. App'x 627 (2d Cir. 2012).[6]  In sum, Plaintiff's conclusory

allegations regarding the Town's purported failure to train cannot sustain municipal liability. *See*

*Santos v. N.Y. City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) ("Because the existence of a

municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on

the conclusory assertions of the plaintiff, [the plaintiff's] claims against the [c]ity are dismissed

with prejudice." (citation omitted)); *Simms*, 2011 WL 4543051, at *3 (holding that conclusory

failure-to train allegations "must be disregarded").

---

[6] The Court notes that "Plaintiff's intent to request a Motion to Compel" to "seek training history and detailed records of Amorim and Fields" will not enable her to circumvent this pleading standard. (Pl.'s Opp'n at unnumbered 3.) "[C]ourts in this district have generally required that plaintiffs provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train." *Simms*, 2011 WL 4543051, at *2 n.3; *see also Calderon v. City of N.Y.*, —F. Supp. 3d—, 2015 WL 5802843, at *16 (S.D.N.Y. Oct. 5, 2015) (noting "the Second Circuit has indicated that *some* non-conclusory allegation as to deficient training programs is necessary at the pleading stage"), *reconsideration granted in part on other grounds*, 2015 WL 6143711 (S.D.N.Y. Oct. 19, 2015). Indeed, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 391 (S.D.N.Y. 2013) (internal quotation marks omitted) (citing *Connick*, 563 U.S. at 62). As noted above, no such facts are alleged by Plaintiff.

Because Plaintiff fails to adequately allege that the Town acted pursuant to an official policy or custom, the Court finds that the Amended Complaint cannot satisfy the requirements of *Monell*. Accordingly, the Town is entitled to dismissal of any claims against it.

### 2. Claims against Justice Romig

According to the Amended Complaint, "[Justice] Romig knowingly signed a warrant for false charges[,] . . . giving illegal orders to the East Fishkill Police to arrest and detain [Plaintiff]," (Am. Compl. 48), then "took it upon himself to . . . proceed with the intent to force [a] trial without subject matter jurisdiction established," (*id.* at 31). Even if true, Plaintiff's allegations are foreclosed by absolute immunity to which Justice Romig is entitled.

It is "well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam).[7] This immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam); *accord Miller v. Cty. of Nassau*, 467 F. Supp. 2d 308, 312 (E.D.N.Y. 2006) (explaining that "the doctrine of judicial immunity is so expansive").

Judges are immune from suit except under two sets of circumstances. *Mireles*, 502 U.S. at 11–12. First, judicial immunity does not apply when the judge takes action "outside the scope of his [or her] official judicial duties." *Quitoriano v. Raff & Becker, LLP*, 675 F. Supp. 2d 444, 450 (S.D.N.Y. 2009). "Whether an act by a judge is a 'judicial' one relates to the nature of the act itself, such as 'whether it is a function normally performed by a judge,' and 'whether the

---

[7] Though Plaintiff seeks only punitive and compensatory damages against Justice Romig, (*see* Am. Compl. 85–86), it bears noting that absolute immunity bars not only § 1983 claims for damages but also claims for injunctive relief, except where a declaratory decree has been violated or declaratory relief is unavailable, *Montero*, 171 F.3d at 761; *see also Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011).

parties dealt with the judge in his judicial capacity.'" *Bobrowsky*, 777 F. Supp. 2d at 712 (alterations and some internal quotation marks omitted) (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  Second, a judge is not immune from actions that, although judicial in nature, are taken in the complete absence of jurisdiction.  *Mireles*, 502 U.S. at 11–12; *see also Gross v. Rell*, 585 F.3d 72, 82 (2d Cir. 2009) ("Even judicial immunity, which provides judges with very broad protection, may be overcome if the judge acts in the clear absence of all jurisdiction or if he is not acting in his judicial capacity.").  In this context, the scope of a judge's jurisdiction must be construed broadly, *Stump*, 435 U.S. at 356, such that the judge only "acts in the absence of all jurisdiction when [he or she] does not have any statutory or constitutional power to adjudicate the case." *Gross*, 585 F.3d at 84 (italics and internal quotation marks omitted).  In contrast, where the judge is performing in his or her judicial capacity, immunity does not give way even if "the action he [or she] took was in error, was done maliciously, or was in excess of his [or her] authority." *Stump*, 435 U.S. at 356; *see also Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997) ("The cloak of immunity is not pierced by allegations of bad faith or malice . . . ." (internal quotation marks omitted)); *Aron v. Becker*, 48 F. Supp. 3d 347, 363 (N.D.N.Y. 2014) (noting that "even allegations of bad faith or malice cannot overcome judicial immunity").  "[R]ather, [a judge] will be subject to liability only when he [or she] has acted in the clear absence of *all* jurisdiction." *Stump*, 435 U.S. at 356–57 (emphasis added) (internal quotation marks omitted); *see also Maestri v. Jutkofsky*, 860 F.2d 50, 52 (2d Cir. 1988) ("The courts . . . have made a critical distinction:  a judge who performs a judicial act in excess of his or her jurisdiction is immune to civil suit; a judge who acts in the clear absence of jurisdiction is not.").[8]

---

[8] The Supreme Court has clarified this distinction through the following examples:

In the instant Action, Plaintiff alleges Justice Romig wrongfully signed a warrant authorizing Plaintiff's arrest and then refused to dismiss the underlying charges against her. (*See, e.g.*, Am. Compl. 49 ("[Justice] Romig has orchestrated both arrests and allowed the D[utchess] C[ounty] D[istrict] A[ttorney's] Office to pursue charges with no law attached . . . ."); *id.* at 68 ("[Justice] Romig disgraced and dishonored his oath of office by issuing a warrant on false charges causing a false arrest.").) These claims against Justice Romig stem from actions taken while he presided over Plaintiff's criminal proceedings in the Town Court, *see generally* N.Y. Town Law § 31 (1987) (granting town justices broad jurisdiction in civil and criminal matters, as well as in "special proceedings"), which clearly falls within his judicial capacity, *see Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) ("[The Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature."); *Karris v. Varulo*, No. 14-CV-1077, 2014 WL 1414483, at *3 (E.D.N.Y. Apr. 10, 2014) (holding that judicial immunity applies to claims "relating to actions taken in [the judge's] judicial capacity during [the] plaintiff's underlying criminal prosecution"); *Vanguilder v. Giardino*, No. 05-CV-2033, 2005 WL 1229742, at *1 (E.D.N.Y. May 23, 2005) (finding a judge entitled to judicial immunity where the "plaintiff's allegations against [him] all arise out of the [j]udge's actions during [the] plaintiff's criminal proceedings").[9]

---

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he [or she] would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 357 n.7 (citing *Bradley v. Fisher*, 80 U.S. 335, 352 (1871)).

[9] It bears noting that Plaintiff seems to concede that Justice Romig was acting in a judicial capacity, (*see* Am. Compl. 5–6 (alleging that Justice Romig, "at all times relevant to this [C]omplaint, was acting as a duly elected Town official and was employed, compensated,

18

Nevertheless, Plaintiff asserts that Justice Romig was acting in the complete absence of jurisdiction such that judicial immunity does not apply here. (*See, e.g.*, Am. Compl. 3 ("[Justice] Romig acted without [j]urisdictional [a]uthority to proceed . . . .").) She specifically claims Justice Romig lacked jurisdiction over her because of the invalidity of VTL § 511. (*See* Pl.'s Opp'n at unnumbered 2 ("Immunity issues are moot without enactment and jurisdiction over . . . Plaintiff.").) Even accepting this contention as true, Plaintiff alleges, at most, that Justice Romig acted "in excess of [his] authority." *See Maestri*, 860 F.2d at 52. When, as in this case, "jurisdiction over the subject-matter is invested by law in the judge, or in the court which he [or she] holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his [or her] determination as any other questions involved in the case." *Tucker*, 118 F.3d at 933–34 (emphasis and internal quotation marks omitted).[10] Here, Justice Romig possessed subject matter jurisdiction over Plaintiff's violation of the traffic laws, *see* N.Y. Crim. Proc. Law §§ 10.30(1)-(2) (local criminal courts possess jurisdiction over all offenses other than felonies), and "it is apparent that a judge who possesses subject matter jurisdiction is not within the 'clear absence of all jurisdiction' posture which would deprive him [or her] of the use of the defense of judicial immunity," *Green v. Maraio*, 722 F.2d 1013, 1017 (2d Cir. 1983); *see also Ceparano v. Southampton Justice Court*, 404 F. App'x 537, 539 (2d Cir. 2011) ("[E]ven assuming . . . that the judge did not possess proper personal jurisdiction over [the plaintiff] when

---

enriched, and rewarded performing his duties as a Judicial Justice for the Town . . . ."); *id.* at 30 (asserting that Justice Romig "[was] acting within the scope of [his] presumed duties as employees being enriched and compensated by the . . . Town" )), even as she offers the conclusory allegation that "[Justice] Romig acted in a personal capacity severing [him] from immunity," (*id.* at 3).

[10] While Plaintiff contends that "[Justice] Romig . . . [n]ever obtained subject matter jurisdiction as there was . . . no valid law," (Am. Compl. 69), the Court has already, in this Opinion and others, reaffirmed the validity of VTL § 511.

the bench warrant was issued, the judge did not act in the clear absence of *all* jurisdiction necessary to deprive the judge of immunity because local criminal courts in New York possess subject matter jurisdiction over the misdemeanor [underlying that warrant]."). Therefore, Plaintiff's claims against Justice Romig are barred by the doctrine of absolute immunity.[11]

### 3. Claims against Officer Amorim

Plaintiff alleges a number of causes of action against Amorim—namely, false arrest, *Miranda* violation, unreasonable search, unconstitutional conditions of confinement, and excessive force. Even reviewing these allegations with the special solitude owed to pro se litigants, the Court finds all but the excessive force and unreasonable search allegations fail to state a claim upon which relief can be granted.

---

[11] Defendants incorrectly assert that "[P]laintiff wholly failed to plead any cause of action with respect to an April 8, 2014 arrest, or an April 2, 2014 bench warrant, within her Amended Complaint." (Defs.' Reply Mem. of Law in Support of Mot. ("Defs.' Reply") 8 (Dkt. No. 117).) Indeed, the Amended Complaint alleges that "[Justice] Romig again used his 'personal' police force to apprehend and detain [Plaintiff] in retaliation, [by] sign[ing] a warrant the same day (April 2nd) he received notice of [Plaintiff's] federal complaint." (Am. Compl. 48 (italics omitted).) That clarification aside, judicial immunity would nonetheless apply to any such cause of action arising from this quintessentially judicial conduct. *See Bliven*, 579 F.3d at 209 ("[E]ven allegations of bad faith or malice cannot overcome judicial immunity.").

Furthermore, to the extent Plaintiff alleges that Justice Romig conspired to violate her civil rights, (*see* Am. Compl. 48 (claiming Justice Romig "pursued [Plaintiff,] conspiring with his 'personal' police force to apprehend and detain [her] against her will with no valid cause to do so")), that claim would also be barred under the doctrine of absolute immunity, *see Delarosa v. Serita*, No. 14-CV-737, 2014 WL 1672557, at *4 (E.D.N.Y. Apr. 28, 2014) ("A claim of conspiracy to deprive [the] [p]laintiff of his constitutional rights cannot stand where the state actors in question have absolute immunity."); *Bernstein v. New York*, 591 F. Supp. 2d 448, 466 (S.D.N.Y. 2008) (dismissing claims for damages on judicial immunity grounds where the plaintiffs "alleged that certain judges are members of the conspiracy against them"); *Rzayeva v. United States*, 492 F. Supp. 2d 60, 88 (D. Conn. 2007) (dismissing conspiracy claim against state judge on the basis of absolute judicial immunity).

a.  <u>False Arrest</u>

Broadly asserting a claim of false arrest against Moving Defendants, (*see, e.g.,* Am.

Compl. 2), the Amended Complaint alleges that "Amorim . . . followed illegal orders to detain an

individual on false charges, (*id.* at 47).[12]

A "§ 1983 claim for false arrest derives from [the] Fourth Amendment right to remain

free from unreasonable seizures, which includes the right to remain free from arrest absent

probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006); *see also Alvarez v. Cty. of*

*Orange*, 95 F. Supp. 3d 385, 392 (S.D.N.Y. 2015) (same).  "To prevail, a plaintiff must prove

four elements:  (1) the defendant intended to confine him [or her], (2) the plaintiff was conscious

of the confinement, (3) the plaintiff did not contest the confinement[,] and (4) the confinement

was not otherwise privileged." *Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186, 203 (E.D.N.Y.

---

[12] In her opposition papers, Plaintiff alleges that "she was arrested [in] February 2011 by
Officer Tarpey of the East Fishkill Police Dep[artmen]t" and alleges that "[t]his arrest is
understood to be unlawful." (Pl.'s Opp'n at unnumbered 1 (alterations omitted).)  This
unsubstantiated assertion fails to state a claim upon which relief can be granted, first and
foremost because Officer Tarpey is not a named defendant.  *See Ivey v. U.S. Dep't of Justice*
*Exec. Office for U.S. Att'y.*, No. 13-CV-917, 2015 WL 507219, at *5 (N.D.N.Y. Feb. 6, 2015)
(dismissing a claim sua sponte where the allegation implicated a non-party and therefore failed to
state a claim upon which relief can be granted).  Moreover, any claim based on her February
2011 arrest is time-barred because the statute of limitations for a § 1983 claim arising in New
York is three years, *Shomo v. City of N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009), and begins to run
on the date of the alleged arrest, *see, e.g., Lont v. Roberts*, No. 12-CV-4960, 2013 WL 1810759,
at *2 (E.D.N.Y. Apr. 26, 2013) (noting that the "[p]laintiff's false arrest claim accrued on . . . the
date he was arrested").  Because the instant Action was not commenced within three years of the
allegedly wrongful arrest in February 2011, any claims based upon that event must be dismissed
as time-barred.  Though Plaintiff seeks to avoid this time bar on the basis of "a continuing
violation rooted from a situation . . . Plaintiff was unaware of," (Pl.'s Opp'n at unnumbered 5
(italics omitted)), she fails, as required under the doctrine, to "allege both the existence of an
ongoing policy . . . and some non-time-barred acts taken in furtherance of that policy," *Harris v.*
*City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999); *see also Fahs Constr. Grp., Inc. v. Gray*, 725
F.3d 289, 292 (2d Cir. 2013) ("To trigger such a delay [in the commencement of the statute of
limitations period], the plaintiff must allege both the existence of an ongoing policy of
discrimination and some non-time-barred acts taken in furtherance of that policy." (internal
quotation marks omitted)).

2014) (internal quotation marks omitted).  Probable cause is "a complete defense to an action for

false arrest, whether that action is brought under state law or under § 1983." *Weyant v. Okst*, 101

F.3d 845, 852 (2d Cir. 1996) (citation and internal quotation marks omitted); *see also McKay v.

City of N.Y.*, 32 F. Supp. 3d 499, 505 (S.D.N.Y. 2014) (same).  Notably, "[p]robable cause is

presumed to exist if a plaintiff is arrested pursuant to an arrest warrant." *Williams v. City of N.Y.*,

916 F. Supp. 2d 235, 241 (E.D.N.Y. 2012); *see also Phillips v. DeAngelis*, 571 F. Supp. 2d 347,

353 (N.D.N.Y. 2008) ("No cause of action for false arrest will lie where the arrest was effected

pursuant to an arrest warrant."), *aff'd*, 331 F. App'x 894 (2d Cir. 2009).  That presumption "is

rebuttable only through proof of fraud, perjury[,] or the misrepresentation or falsification of

evidence." *Artis v. Liotard*, 934 F. Supp. 101, 103 (S.D.N.Y. 1996); *see also Johnson v. Pugh*,

No. 11-CV-385, 2013 WL 3013661, at *3 (E.D.N.Y. June 18, 2013) (concluding the plaintiff

fails to state a claim for false arrest where "[he] concedes he was arrested pursuant to a

warrant."); *Williams*, 916 F. Supp. 2d at 241–42 (holding that a plaintiff arrested pursuant to an

arrest warrant can only overcome the presumptive privilege through evidence "that the

indictment was procured by fraud, perjury, or the misrepresentation or falsification of

evidence"); *Batista v. City of N.Y.*, No. 05-CV-8444, 2007 WL 2822211, at *6 (S.D.N.Y. Sept.

25, 2007) (noting "it is well established that there is no civil remedy available to a plaintiff

arrested pursuant to a valid arrest warrant under [§] 1983").

    As noted above, Plaintiff was arrested pursuant to an arrest warrant issued by Justice

Romig.  (*See* Am. Compl. 9.)  Neither the Amended Complaint nor Plaintiff's opposition papers

present evidence, or even a viable allegation, that any Town police officer engaged in any

misconduct in the procurement of the warrant.  Rather, her claim that the warrant was

"invalid/unlawful" appears based on her belief that VTL § 511 is itself invalid and thus cannot

support a valid arrest. (*Id.* at 70.) Ostensibly along these lines, Plaintiff offers the conclusory

assertion that "Amorim acted on administrative orders not judicial when arresting . . . Plaintiff on

a purported bench warrant for 'failure to appear.'" (Pl.'s Opp'n at unnumbered 6.) The Court,

however, need not heed Plaintiff's legal—and notably incorrect—conclusions. Because

Plaintiff's general allegations are insufficient to rebut the presumption of probable cause from a

facially valid arrest warrant, Plaintiff cannot state a claim for false arrest against Amorim.

      b.  *Miranda* Violation

     The Amended Complaint further alleges "unreasonable search and seizure," (Am. Compl.

47), presumably on the basis that Plaintiff "was not Mirandized at any point [in] time" upon her

arrest on March 17, 2014, (*id.* at 9). However, such a claim is not actionable under § 1983,

because the "[f]ailure to give *Miranda* warnings is not an independent wrong." *Hickey v. City of

N.Y.*, No. 01-CV-6506, 2004 WL 2724079, at *19 (S.D.N.Y. Nov. 29, 2004), *aff'd*, 173 F. App'x

893 (2d Cir. 2006); *see also Neighbour v. Covert*, 68 F.3d 1508, 1511 (2d Cir. 1995) (per

curiam) ("[E]ven if . . . [the plaintiff's] *Miranda* rights had been violated, that violation, standing

alone, would not form a basis for liability under § 1983); *Sullivan v. City of N.Y.*, No. 14-CV-

1334, 2015 WL 5025296, at *7 (S.D.N.Y. Aug. 25, 2015) ("[I]t is well established that mere

violations of *Miranda*, do not—absent coercion—rise to the level of constitutional violations

actionable under [§] 1983." (citations omitted)); *Gustafson v. Vill. of Fairport*, 106 F. Supp. 3d

340, 353 (W.D.N.Y. 2015) (holding that "any claim based on this alleged failure [to receive

*Miranda* warnings] fails as a matter of law").[13] For these reasons, Plaintiff's *Miranda* violation

claim is dismissed.

---

[13] Moreover, as Defendants correctly point out, (*see* Defs.' Reply 10), Plaintiff failed to respond to their argument that any alleged *Miranda* violation is not actionable under § 1983, (*see generally* Pl.'s Opp'n). The Court, therefore, deems this claim abandoned. *See Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (affirming that a "[c]ourt may, and generally

c.  Unreasonable Search

According to the Amended Complaint, "[Amorim] was rough and excessive in searching [Plaintiff's] breasts and upper thigh areas." (Am. Compl. 9.)  Plaintiff allegedly "felt pain as [Amorim] ran her hand up [Plaintiff's] leg and hit [Plaintiff's] gentile [sic] area with force . . . ." (*Id.*)

The search of a person incident to an arrest is presumptively reasonable under the Fourth Amendment. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) ("[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."); *Kennedy v. City of N.Y.*, No. 12-CV-4166, 2015 WL 6442237, at *16 (S.D.N.Y. Oct. 23, 2015) ("[A] search incident to the arrest requires no additional justification.  It is the fact of the lawful arrest which establishes the authority to search." (internal quotation marks omitted)).  "Nevertheless, a search incident to a lawfully executed arrest may still violate the Fourth Amendment, if conducted in an otherwise unreasonable manner." *Wang v. Vahldieck*, No. 09-CV-3783, 2012 WL 119591, at *10 (E.D.N.Y. Jan. 9, 2012); *see also Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) ("[I]t was well established that the use of excessive force in the course of an arrest is constitutionally prohibited."); *Bolden v. Vill. of Monticello*, 344 F. Supp. 2d 407, 417 (S.D.N.Y. 2004) (noting "[a] lawful arrest . . . creates a presumption of reasonableness regarding an attendant search" that "can be rebutted by a showing that the search was conducted in an otherwise unreasonable manner").  For instance, "'unreasonable, non-consensual, inappropriate touching' can constitute

---

will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed"); *accord Cruz v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 13-CV-1335, 2014 WL 2547541, at *7 (S.D.N.Y. June 4, 2014) (deeming a claim abandoned where the "[p]laintiff declined to respond to [the] [d]efendant's argument" that the claim should be dismissed).

'unreasonable intrusions into a plaintiff's bodily integrity in violation of the Fourth Amendment.'" *Golden v. Cty. of Westchester*, No. 10-CV-8933, 2012 WL 4327652, at *5 (S.D.N.Y. Sept. 18, 2012) (alterations omitted) (quoting *Fontana v. Raskin*, 262 F.3d 871, 880–81 (9th Cir. 2001)).

While "[s]ome bodily intrusions may be provably accidental or de minimis and thus constitutionally reasonable," *Wright v. City of Waterbury*, No. 07-CV-306, 2011 WL 1106217, at *6 (D. Conn. Mar. 23, 2011) (quoting *Fontana*, 262 F.3d at 880), the Amended Complaint's descriptions of a "rough and excessive" search exceed that threshold, (Am. Compl. 9). In alleging she "felt pain" as a result of the "force" used by Amorim, *see Collier v. Locicero*, 820 F. Supp. 673, 679 (D. Conn. 1993) (explaining that "evidence indicating that a frisk was 'excessively rough or intrusive' is sufficient to raise questions of fact" regarding a Fourth Amendment claim), Plaintiff does more than simply complain of incidental contact with sensitive areas, *cf. Golden*, 2012 WL 4327652, at *5–6 (holding that the above-the-clothing touching of the arrestee's breasts and genital areas during a search incident to arrest was reasonable and minimally intrusive as a matter of law); *Pascual v. Fernandez*, No. 11-CV-7075, 2013 WL 474292, at *6 (S.D.N.Y. Jan. 29, 2013) (finding pat-down of female arrestee's breasts, buttocks, and inner thigh area not sufficient to give rise to a constitutional violation); *Wright*, 2011 WL 1106217, at *7 (dismissing a Fourth Amendment claim where the police officer "cupped" the male plaintiff's groin area on two occasions during a pat-down).[14] Accordingly,

---

[14] In her opposition papers, Plaintiff for the first time alleges that she "began to experience blood from her genital area . . . immediately after the unreasonable (rough) search [by Amorim]." (Pl.'s Opp'n at unnumbered 6–7.) The Amended Complaint, on the other hand, notes that this bleeding was the result of her menstrual cycle, (*see* Am. Compl. 10), rather than any "significant injury from the encounter with . . . Amorim," (Pl.'s Opp'n at unnumbered 6). In any event, "a complaint may not be amended by the briefs in opposition to a motion to dismiss," *Chamberlain*, 986 F. Supp. 2d at 390 n.19 (internal quotation marks omitted) (quoting *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)), the Court does not consider this new

the Court cannot say—at least at the motion to dismiss stage—that the search conducted by

Amorim, as described by Plaintiff, was reasonable. Because Plaintiff has plausibly pled more

than a de minimis intrusion, Moving Defendants' are not entitled to dismissal on this claim.

### d. Unconstitutional Conditions of Confinement

As a final cause of action implicating Amorim, Plaintiff alleges that she was denied

"necessities such as water/food/sanitary . . . needs/medical attention[,] endangering . . . [her]

health and well[-]being." (Am. Compl. 30–31.) Plaintiff seeks to hold Amorim liable for "not

following basic human rights in providing sanitary needs and water," (*id.* at 47), which the Court

construes as a claim for unconstitutional conditions of confinement.[15]

---

claim in its analysis here, *see Kiryas Joel Alliance v. Vill. of Kiryas Joel*, No. 11-CV-3982, 2011
WL 5995075, at *10 n.9 (S.D.N.Y. Nov. 29, 2011) (noting that "the plaintiffs cannot use their
opposition to the motion to dismiss to raise new claims or arguments, and thus the [c]ourt does
not address the new arguments made in the plaintiffs' memorandum"), *aff'd*, 495 F. App'x 183
(2d Cir. 2012).

[15] While Plaintiff puts forth this claim as arising under the Eighth Amendment, (*see* Am.
Compl. 47 (alleging that Amorim "violat[ed] the 8th Amendment Right against cruel and
unusual punishment")), the Court treats these allegations as brought under the Due Process
Clause of the Fourteenth Amendment because she was confined as a pre-trial detainee, *see Best
v. N.Y.C. Dep't of Corr.*, 14 F. Supp. 3d 341, 355 (S.D.N.Y. 2014) (analyzing a detainee's Eighth
Amendment challenge to the constitutionality of the conditions of his confinement under the
Fourteenth Amendment); *Pagan v. Westchester Cty.*, No. 12-CV-7669, 2014 WL 982876, at *16
(S.D.N.Y. Mar. 12, 2014) ("Pretrial detainees are protected by the Due Process Clause of the
Fourteenth Amendment rather than by the Eighth Amendment's prohibition on cruel and unusual
punishment, which applies only to convicted prisoners." (citing, inter alia, *Weyant*, 101 F.3d at
856)), *reconsideration granted on other grounds by* 2015 WL 337403 (S.D.N.Y. Jan. 26, 2015).
However, such distinction matters not here because "the standard for deliberate indifference is
the same under the Due Process Clause of the Fourteenth Amendment as it is under the Eighth
Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 70 (2d Cir. 2009); *see also Cuoco v.
Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (noting that the Second Circuit "ha[s] often applied
the Eighth Amendment deliberate indifference test to pre-trial detainees bringing actions under
the Due Process Clause of the Fourteenth Amendment"); *Pagan*, 2014 WL 982876, at *16
("Because an unconvicted detainee's rights are at least as great as those of a convicted prisoner,
courts apply the same deliberate indifference test developed under the Eighth Amendment to
Fourteenth Amendment claims." (internal quotation marks omitted)).

To state such a claim, a detainee must meet the requirements of the deliberate indifference standard by alleging that "(1) objectively, the deprivation the [detainee] suffered was sufficiently serious that he [or she] was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind . . . , such as deliberate indifference to [detainee] health or safety.'" *Walker*, 717 F.3d at 125 (internal quotation marks omitted). This first objective element requires the detainee to "show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his [or her] health." *Walker*, 717 F.3d at 125 (third alteration in original); *see also Anderson v. Coughlin*, 757 F.2d 33, 34–35 (2d Cir. 1985) (noting that the objective element requires the plaintiff to demonstrate that the conditions under which he or she was confined resulted "in unquestioned and serious deprivations of basic human needs" (internal quotation marks omitted)).

In the instant Action, Plaintiff fails to allege a sufficiently serious deprivation to support any claim for unconstitutional conditions of confinement. The Amended Complaint asserts that "[Plaintiff] was without water or sanitary needs for several hours in custody" because Amorim "denied [her requests] each and every time." (Am. Compl. 11.)[16] Plaintiff cannot meet the threshold for serious deprivations of basic human needs required to establish a constitutional violation, as these alleged deprivations lasted only several hours. *See Dillon v. City of N.Y.*, No. 12-CV-6746, 2013 WL 3776252, at *6 (S.D.N.Y. July 18, 2013) (holding that "a deprivation of access to shower and toothpaste for one morning . . . plainly do[es] not rise to the level of an

---

[16] To the extent the Amended Complaint seeks to state a claim on the basis of Amorim's failure to provide Plaintiff with privacy while using the bathroom, (*see* Am. Compl. 10), such an allegation would not rise to the level of a constitutional violation under the Fourteenth Amendment, *see Esmont v. City of N.Y.*, 371 F. Supp. 2d 202, 217 (E.D.N.Y. 2005) (holding that the jail officials' failure to provide a female pretrial detainee with privacy while using bathroom did not violate her due process rights).

objective [constitutional] violation"); *Beckford v. N.Y. State Office of Mental Health*, No. 06-CV-561, 2010 WL 1816689, at *12 (W.D.N.Y. May 3, 2010) (determining that a 22-hour deprivation of water and electricity does not rise to the level of a constitutional violation); *Simmons v. Kelly*, No. 06-CV-6183, 2009 WL 857410, at *7 (S.D.N.Y. Mar. 31, 2009) ("Courts in this jurisdiction have held that a deprivation of food and water during detention that only lasted a few hours did not rise to the level of a constitutional violation."); *Dzwonczyk v. Syracuse City Police Dep't*, 710 F. Supp. 2d 248, 269 (N.D.N.Y. 2008) (holding that lack of food and water overnight was not a constitutional violation); *Bourdon v. Roney*, No. 99-CV-0769, 2003 WL 21058177, at *11 (N.D.N.Y. Mar. 6, 2003) (report and recommendation) (holding that a three-hour period without bathroom privileges and water does not constitute a constitutional violation).[17]   Plaintiff's bare assertion that "these actions can only be construed as a form of punishment . . . because there is no plausible explanation to deprive water or sanitary needs from a person in custody" does not alter that determination, (Pl.'s Opp'n at unnumbered 6 (internal quotation marks omitted)), as the Court need not heed her legal conclusion that "withholding medical attention and water equates to deliberate indifference," (*id.* at unnumbered 7).   Indeed, courts have made clear that "several hours" without these sorts of necessities, while uncomfortable, do not rise to the level of a constitutional violation. *See, e.g., Calhoun v. N.Y.C. Dep't. of Corr.*, No. 10-CV-182, 2014 WL 144659, at *6 (S.D.N.Y. Jan. 14, 2014) (report and recommendation) (explaining that a "[§] 1983 claim will not lie for merely unpleasant prison conditions").

Additionally, the Amended Complaint asserts that "Amorim denied water and/or medical attention while [Plaintiff] complained of dizziness and dehydration." (Am. Compl. 32; *see also*

---

[17] Of note, the Third Circuit has held that officers' "failure to provide needed sanitary napkins for a few hours may have resulted in discomfort," but was only "de minimis, and certainly not sufficiently serious to implicate [the detainee's] constitutional rights." *Brown v. Hamilton Twp. Police Dep't Mercer Cty.*, 547 F. App'x 96, 98 (3d Cir. 2013).

*id.* at 48 ("Both officers refused [Plaintiff] water or medical attention when she was complaining of pain and dizziness/dehydration.")  This alleged condition, however, is not sufficiently serious under the objective prong of the deliberate indifference standard.  *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) ("The objective component requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." (internal quotation marks omitted)); *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where the failure to treat a [detainee's] condition could result in further significant injury or the unnecessary and wanton infliction of pain." (internal quotation marks omitted)).  Rather than being akin to "death, degeneration, or extreme pain," *Hill*, 657 F.3d at 122 (internal quotation marks omitted), Plaintiff's "complain[ts] of dizziness and dehydration" are minor as well as brief, (Am. Compl. 11).  Her allegations thus fall short of the threshold for a constitutional claim.  *See Ford v. Phillips*, No. 05-CV-6646, 2007 WL 946703, at *12 n.70 (S.D.N.Y. Mar. 27, 2007) (noting that headaches and dizzy spells do not constitute serious medical need for purposes of a deliberate indifference claim); *Qader v. New York*, 396 F. Supp. 2d 466, 470 (S.D.N.Y. 2005) (holding that the "plaintiff's dizziness and 'terrible headache' do not satisfy the objective component, and thus her medical needs do not rise to the level of a constitutional claim"); *Hutchinson v. N.Y. State Corr. Officers*, No. 02-CV-2407, 2003 WL 22056997, at *5 (S.D.N.Y. Sept. 4, 2003) (holding that "digestion problems, weight loss, and dizziness" are not "conditions of urgency, which may produce death, degeneration, or extreme pain" (alterations and internal quotation marks omitted)).

Because Plaintiff's allegations regarding the deprivation of necessities and denial of adequate medical care both fail to satisfy the objective element of the deliberate indifference

standard, the Amended Complaint necessarily fails to satisfy the subjective inquiry as well. *See Jabbar v. Fischer*, 683 F.3d 54, 58 (2d Cir. 2012) (holding that deliberate indifference "cannot be plausibly alleged" where the plaintiff failed to establish an excessive risk to inmates' safety for purposes of the objective prong). Accordingly, this claim against Amorim is dismissed.

      4.  <u>Claims against Sergeant Fields</u>

      Construed liberally, the Amended Complaint alleges three distinct claims against Fields: false arrest, failure to intervene, and unconstitutional conditions of confinement. The Court addresses these causes of action in turn, finding that each fails to state a claim upon which relief can be granted.

      a.  <u>False Arrest</u>

      According to the Amended Complaint, "Fields gave illegal orders to arrest and obtain an individual under illegal orders and an unlawful warrant by [Justice] Romig." (Am. Compl. 88.) Yet, as discussed above, probable cause is "a complete defense" to a claim of false arrest, *Weyant*, 101 F.3d at 852, unless a plaintiff can prove "fraud, perjury[,] or the misrepresentation or falsification of evidence," *Artis*, 934 F. Supp. at 103. For the same reason as above—namely, the failure to rebut the presumption of probable cause from a facially valid arrest warrant— Plaintiff's false-arrest claim against Fields is dismissed. *See Pugh*, 2013 WL 3013661, at *3 ("Where an arrest is made pursuant to a warrant, a plaintiff cannot make the essential showing that [the] defendant confined him without justification; thus, there can be no claim for false arrest under § 1983.")

      b.  <u>Failure to Intervene</u>

      Plaintiff also alleges that Fields failed to intervene in Amorim's use of excessive force while removing her handcuffs at the Station. (*See, e.g.*, Am. Compl. 47 ("Fields stood by . . .

witnessing the excessive force . . . .").) According to the Amended Complaint, "Fields witnessed [Plaintiff's] pain, the force Amorim used[,] and did nothing to correct Amorim and help [Plaintiff]," despite standing "within 2 feet of [Plaintiff] and Amorim." (*Id.* at 32.) Although it is well settled that a police officer "has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers," *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988), Plaintiff has failed to make out a claim on that basis.

An officer who does not personally inflict the injury at the core of an excessive use of force claim may still be liable under § 1983 if the officer both fails to intervene to prevent the harm, in spite of a "realistic opportunity" to do so, *id.* at 11–12, and "observes or has reason to know . . . that excessive force is being used," *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *see also Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009) ("Officers who are present when constitutional torts are being committed have a duty to intervene and stop the unconstitutional conduct if they have a reasonable opportunity to do so."). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 463 (S.D.N.Y. 2012) (quoting *Anderson,* 17 F.3d at 557). "Courts have found that, where officers assault an individual so quickly that a fellow officer does not have a realistic opportunity to intercede, the witness officer is not liable for the excessive force." *Phillips v. Roy*, No. 08-CV-878, 2011 WL 3847265, at *6 (N.D.N.Y. Aug. 29, 2011) *see also Lehal v. United States*, No. 13-CV-3923, 2015 WL 9592706, at *8 (S.D.N.Y. Dec. 29, 2015) ("Courts may look to the length of the incident, inter alia, to determine whether an officer had a realistic opportunity to intervene." (italics omitted)).

Here, Plaintiff's failure-to-intervene claim fails because she does not plausibly plead that Fields had any "realistic opportunity" to intervene, even if "he stood close by watching." (Pl.'s Opp'n at unnumbered 8 (alterations omitted).)  According to the Amended Complaint, Fields was present as Amorim "twisted and forced [Plaintiff's] arm to [the] side and *quickly* pushed up [her arm]." (Am. Compl. 10 (emphasis added).)  Because this removal of handcuffs occurred "quickly," the facts alleged by Plaintiff herself indicate Fields had no realistic opportunity to prevent the use of force. *See Chamberlain*, 986 F. Supp. 2d at 387 (noting "the [a]mended [c]omplaint itself alleges that [the officer] fired his weapon 'immediately'" in rejecting failure-to-intervene claims against the defendants (alterations omitted)); *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 327 (S.D.N.Y. 2006) (dismissing failure-to-intervene claims where the facts alleged by the plaintiff indicated that the defendants "did not have a reasonable opportunity to intervene in such a rapid series of events"), *aff'd*, 461 F. App'x 18 (2d Cir. 2012).  In asserting "Fields had undoubtedly a realistic opportunity to correct Amorim when . . . Plaintiff first cried out in pain and also had ample opportunity to react once Plaintiff was in pain," (Pl.'s Opp'n at unnumbered 8), Plaintiff herself concedes that there was no realistic opportunity to intervene to *prevent* the harm from occurring, *see Anderson*, 17 F.3d at 557.  Accordingly, Plaintiff's failure-to-intervene claim against Fields is dismissed.

c.   Unconstitutional Conditions of Confinement

Lastly, Plaintiff alleges that Fields "supervised Amorim as [Plaintiff] was harmed and left without water and deprived sanitary needs." (Am. Compl. 88.)  The Amended Complaint further asserts that, "[a]t all times during [Plaintiff's] detention at [the Station], Fields was present and allowed abuse and deprivation under his watch and command." (*Id.*)

32

Though "a supervisory official may be personally liable if he or she has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act," *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1066 (2d Cir. 1989) (internal quotation marks omitted), a constitutional violation must actually exist in order to state a § 1983 claim, *see Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under [§] 1983, there must have been an underlying constitutional deprivation."); *Chamberlain*, 986 F. Supp. 2d at 395 (noting that no supervisory liability claim under § 1983 could exist where there was no constitutional violation by the defendant's subordinates); *Reddick v. Lantz*, No. 07-CV-1793, 2010 WL 1286992, at *6 (D. Conn. Mar. 29, 2010) ("Absent an underlying constitutional violation, there is no cognizable claim for supervisor liability." (internal quotation marks omitted)).  That is not the case here, for, as discussed above, neither the temporary deprivation of necessities "during Plaintiff's custody at the . . . Station," (Pl.'s Opp'n at unnumbered 8), nor the denial of medical care, is sufficiently serious to state a constitutional claim under the deliberate indifference standard, *see Walker*, 717 F.3d at 125.[18]

In the absence of this "necessary factor . . . that a constitutional violation ha[s] occurred," *Alston v. Bendheim*, 672 F. Supp. 2d 378, 388 (S.D.N.Y. 2009), Plaintiff's allegations fail to state a claim against Fields for unconstitutional conditions of confinement.

---

[18] To the extent Plaintiff sought to allege Fields was personally involved in some constitutional deprivation, (*see, e.g.*, Am. Compl. 32 ("[Plaintiff] requested water and complained of injury and dehydration/dizziness to Fields; Fields ignored [Plaintiff's] request and complaints.")), that claim would fail for the same reasons as the allegations against Amorim failed.

III.  Conclusion

For the above reasons, the Court grants in part and denies in part Moving Defendants'

Motion To Dismiss.  Specifically, the Court dismisses with prejudice all Plaintiff's claims

against Moving Defendants, with the exception of the excessive force and unreasonable search

claims against Amorim.[19]  The Clerk of the Court is respectfully directed to terminate the

pending Motion.  (Dkt. No. 91).

SO ORDERED.

Dated:        February 26, 2016
              White Plains, New York

                                        _____
                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

---

[19] While "[a] pro se complaint should not be dismissed without the Court granting leave
to amend at least once," *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (italics omitted); *see
also McGee v. Pallito*, No. 10-CV-11, 2014 WL 360289, at *12 (D.Vt. Feb. 3, 2014) (noting that
"[t]he Second Circuit has cautioned that district courts should not dismiss pro se complaints with
prejudice without granting leave to amend *at least once*" (emphasis added) (italics omitted)),
here the Court has already granted Plaintiff leave to amend, (*see* Dkt. No. 72).  Moreover, as to
the dismissed claims, "[t]he problem with [her] causes of action is substantive; better pleading
will not cure it." *Cuoco*, 222 F.3d at 112; *see also Lastra v. Barnes & Noble Bookstore*, No. 11-
CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012) (dismissing with prejudice a pro se
complaint that was "not simply 'inadequately or inartfully pleaded,' but rather contain[ed]
substantive problems such that an amended pleading would be futile"), *aff'd*, 523 F. App'x 32
(2d Cir. 2013).