UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELE ELLEN SCALPI,<br><br>                              Plaintiff,<br><br>          v.<br><br>TOWN OF EAST FISHKILL, OFFICER TINA AMORIM, SERGEANT ERIC FIELDS, FREDERICK D. ROMIG, COUNTY OF DUTCHESS, WILLIAM GRADY, MELISSA KNAPP PASQUALE, COUNTY OF ORANGE, COMMISSIONER BARBARA J. FIALA, GOVERNOR ANDREW CUOMO, STEVEN K. PATTERSON,<br><br>                              Defendants. | Case No. 14-CV-2126 (KMK)<br><br>OPINION & ORDER |

Appearances:

Michelle Ellen Scalpi
West Haven, CT
*Pro se Plaintiff*

Daniel C. Stafford, Esq.
David L. Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendants County of Dutchess, William Grady, and Melissa Knapp Pasquale*

KENNETH M. KARAS, District Judge:

Michelle Ellen Scalpi ("Plaintiff"), proceeding pro se, filed the instant Amended

Complaint pursuant to 42 U.S.C. § 1983, alleging malicious prosecution by Dutchess County

("County"), Dutchess County District Attorney William Grady ("Grady"), and Dutchess County

Assistant District Attorney Melissa Knapp Pasquale ("Pasquale") (collectively, "Moving

Defendants"). (Dkt. No. 75.) Plaintiff seeks monetary damages. Before the Court is Moving

Defendants' Motion To Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). (Dkt. No. 89.) For the following reasons, the Motion is granted.

## I. Background

### A. Factual Background

The factual allegations that follow are derived from Plaintiff's Amended Complaint. While the Court will sometimes refer to Plaintiff's contentions as "alleged," it nonetheless treats them as true for purposes of the instant Motion.

Plaintiff "was pulled over [in] February of 2011" for driving without a license on a public roadway in the Town of East Fishkill, in violation of New York State Vehicle and Traffic Law ("VTL") § 511. (Am. Compl. 8 (Dkt. No. 75); *see also id.* Ex. E.)[1] Throughout the resulting prosecution, Grady served as District Attorney for the County and Pasquale as an Assistant District Attorney. (*Id.* at 5.) Plaintiff elected to defend herself in that criminal proceeding, readily conceding she "does not and has never obtained, applied [for,] or passed any test to obtain a . . . commercial driver's license" in New York or obtained any license through the New York State Department of Motor Vehicles ("DMV"). (*Id.* at 8.) Rather, she contested the validity of the charges against her on the basis that VTL § 511 was not passed in conformity with the New York State Constitution. (*See, e.g., id.* at 17–18 ("Without an enacting clause the laws referenced . . . have no official evidence that they are from an authority which the individual is subject to or required to obey." (italics omitted)).)

Specifically, Plaintiff requested discovery and the enactment clause for VTL § 511 from the County District Attorney's Office ("DA's Office"). (*Id.* at 8.) She also "presented the court

---

[1] For the sake of clarity, the Court cites to the page numbers of Plaintiff's Amended Complaint, rather than the inconsistent paragraph numbering.

with" case law and other documents, (*id.*), to demonstrate that "VTL [§] 511 . . . was not put through the legislative process and was not enacted properly," (Pl.'s Opp'n to Mot. ("Pl.'s Opp'n") at unnumbered 1 (Dkt. No. 107)). Subsequently, the Town of East Fishkill Justice Court advised Plaintiff via mail that the "'trial was cancelled'" because, according to the Amended Complaint, the DA's Office "could not produce documentation validating [VTL § 511] to be authentic [to] grant[] the court subject matter jurisdiction." (Am. Compl. 9.)[2] Plaintiff was then "contacted months later by [Defendant Justice Frederick D.] Romig [("Justice Romig")] of the Town of East Fishkill [Court] scheduling a trial." (*Id.*) She "responded accordingly," but "no other communication was made by the court," and she "was never provided any decision from the court nor communication validating the section of law" for which she was being prosecuted. (*Id.*) Though according to the Amended Complaint she "was never again contacted" by the DA's Office or the Town of East Fishkill Court, Plaintiff was later "arrested [on March 17, 2014] on a warrant from the Town of East Fishkill, . . . signed by [Justice] Romig" seemingly after she failed to appear in court. (*Id.* at 9.)[3]

---

[2] As part of her submissions, Plaintiff has included this referenced letter from Town Justice Irene McAliney, dated August 7, 2012. (*See* Am. Compl. at 9.) In contrast to Plaintiff's description of its contents, the document merely states, "PLEASE BE ADVISED THAT the Jury Trial in the [*People v. Scalpi*] matter presently scheduled for September 7, 2012 has been cancelled. The Court shall notify all parties of the rescheduled date as soon as that date has been determined." (*Id.* Ex. P.) There is, quite obviously, no mention *at all* of VTL § 511 or the DA Office's supposed failure to provide validation of that law.

[3] The Amended Complaint primarily focuses on Plaintiff's false arrest and due process claims stemming from this March 2014 incident, (*see generally* Am. Compl. 9–13), though none of these allegations implicate Moving Defendants, (*see* Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") 1 (Dkt. No. 90) ("There are no factual allegations against any of the Dutchess County [D]efendants with respect to the March 17, 2014 arrest.").) Thus, for purposes of resolving the instant Motion, the Court concentrates on the events from February 2011 that relate to Plaintiff's claim of malicious prosecution against the County, Grady, and Pasquale. Nevertheless, where necessary, the Court will reference the other allegations contained in the Amended Complaint.

B. Procedural History

Plaintiff commenced the instant Action on March 26, 2014 against the County, Grady, Pasquale, the Town of East Fishkill, Officer Maria Amorim, Sergeant Eric Fields, Justice Romig, Orange County, Commissioner Barbara J. Fiala, Governor Andrew Cuomo, and Steven K. Patterson. (Dkt. No. 1.)  Thereafter, counsel for all named defendants filed motions to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b).  (Dkt. Nos. 40, 42, 47, 52.)  Without rendering a decision on these motions, the Court granted Plaintiff's request for leave to amend her Complaint.  (Dkt. Nos. 72, 74.)  Plaintiff accordingly filed her Amended Complaint on December 31, 2014.  (Dkt. No. 75.)

Pursuant to a scheduling order adopted at a pre-motion conference held before the Court on March 10, 2015, (Dkt. No. 88), Moving Defendants filed their Motion To Dismiss and supporting papers on April 7, 2015, (Dkt. Nos. 89–90), Plaintiff filed her opposition papers on June 1, 2015, (Dkt. No. 107, 110–113), and Moving Defendants filed their reply on June 9, 2015, (Dkt. No. 115).[4]

## II. Discussion

A. Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to

---

In contrast, the Court will not address the affidavits from Mary Townsend and Mark Metrick that Plaintiff submitted along with her opposition papers. (*See* Letter from Plaintiff to the Court (June 1, 2015) Ex. 7 & 8 (Dkt. No. 113).) These affiants claim to have witnessed the issuance of unwarranted traffic citations to Plaintiff at an unspecified point in the past. However, the allegations in the Amended Complaint do not concern these incidents, which thus have no relevance as to whether Moving Defendants engaged in malicious prosecution.

[4] The Court resolves the Motions to Dismiss of the other named defendants in separate Opinions issued contemporaneously with this Opinion.

4

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alterations and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In addition, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all

reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d

302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir.

2012)). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to

facts stated on the face of the complaint, in documents appended to the complaint or incorporated

in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F.*

*v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see*

*also Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20,

2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [her] [complaint]

liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of*

*Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also*

*Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec.

2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). In

deciding a motion to dismiss a pro se complaint, it is appropriate to consider certain "materials

outside the complaint to the extent that they are consistent with the allegations in the complaint,"

*Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)

(internal quotation marks omitted), including "documents that a pro se litigant attaches to [her]

opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec.

15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)

(noting that a court may consider "factual allegations made by a pro se party in his papers

opposing the motion"). However, "the liberal treatment afforded to pro se litigants does not

exempt a pro se party from compliance with relevant rules of procedural and substantive law."

*Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see*

*also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B. Analysis

While the Amended Complaint contains a myriad of allegations stemming from her arrest on March 17, 2014, (*see, e.g.*, Am. Compl. 9–13, 14–15), Plaintiff's limited claims against the County, Grady, and Pasquale arise solely from the prosecution that commenced in February 2011. According to the Amended Complaint, the "County, . . . Pasqual[e,] and Grady have pursued [Plaintiff] unlawfully," (*id.* at 56), based on an allegedly unenforceable law. Specifically, Plaintiff alleges that Pasquale refused to comply with certain discovery demands, (*see id.* at 8), purposefully used an "invalid" DMV abstract against her, (*see id.*), and refused to discontinue the prosecution despite Plaintiff's challenge to the constitutionality of VTL § 511, (*see id.* at 31, 47, 66). She further alleges that Grady "[o]rchestrated this atrocity" by "knowingly promot[ing] the [DA's] [O]ffice to pursue [Plaintiff] without valid cause, without a law of authority . . . ." (*Id.* at 88.) The Amended Complaint also asserts that the County is liable for Pasquale's and Grady's purported misconduct under the doctrine of respondeat superior. (*Id.* at 22–23.)

Moving Defendants argue that Plaintiff's causes of action as to them should be dismissed because: (1) the Amended Complaint fails to state a claim for municipal liability against the County; (2) the allegations of prosecutorial misconduct against Pasquale and Grady do not implicate the County; (3) the official capacity suits against Pasquale and Grady are barred by the Eleventh Amendment; (4) Pasquale and Grady are individually entitled to absolute prosecutorial

immunity; and (5) Plaintiff's unresolved criminal proceeding precludes a claim for malicious prosecution.

    1.  <u>Malicious Prosecution—Applicable Law</u>

"While the tort of malicious prosecution protects against the consequences of wrongful prosecution, public policy favors bringing criminals to justice, and accusers must be allowed room for benign misjudgments." *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 752 (N.Y. 2000). "The law therefore places a heavy burden on malicious prosecution plaintiffs . . . ." *Id.* In order "to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must . . . establish the elements of a malicious prosecution claim under state law." *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (per curiam); *see also Coyle v. Coyle*, 354 F. Supp. 2d 207, 213 (E.D.N.Y. 2005) ("Liability for the New York common law tort of malicious prosecution also gives rise to liability under 42 U.S.C. § 1983."), *aff'd*, 153 F. App'x 10 (2d Cir. 2005). In New York, the elements of a malicious prosecution claim are: "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (internal quotation marks omitted). A plaintiff alleging such a cause of action under § 1983 "must assert, in addition to the elements of malicious prosecution under state law, that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Id.*

    2.  <u>Claims Against the County</u>

Plaintiff contends that the County, "a municipal entity of the State of New York," (Am. Compl. 6), "is liable under the [d]octrine of [respondeat] [s]uperior for the acts of [its]

8

employees committed within the scope of their employee duties," (*id.* at 23; *see also id.* at 74

(asserting the "County [is] liable as those operating under oath are responsible for the actions

under their jurisdiction by any and all agents")).  The Amended Complaint, however, fails to

state a claim for municipal liability because the County, as a municipal defendant, "cannot be

held liable under § 1983 on a respondeat superior theory." *Monell v. Dept. of Soc. Servs.*, 436

U.S. 658, 691 (1978) (italics omitted); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d

Cir. 2012) (reaffirming that "a municipality cannot be held liable on a respondeat superior basis

for the tort of its employee" (italics omitted)).  Rather, for Plaintiff to prevail on her § 1983 claim

against the County, she must satisfy the requirements set forth in *Monell* and its progeny, which

adhere to the well-settled principle that "Congress did not intend municipalities to be held liable

[under § 1983] unless action pursuant to official municipal policy of some nature caused a

constitutional tort." *Monell*, 436 U.S. at 691.  Accordingly, "a municipality can be held liable

under [§] 1983 if the deprivation of the plaintiff's rights under federal law is caused by a

governmental custom, policy, or usage of the municipality." *Jones*, 691 F.3d at 80; *see also*

*Hunter v. City of N.Y.*, 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("In order to sustain a claim for

relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an

official policy or custom that caused injury and a direct causal connection between that policy or

custom and the deprivation of a constitutional right.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the

following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that
> caused the particular deprivation in question; (3) a practice so consistent and
> widespread that, although not expressly authorized, constitutes a custom or usage
> of which a supervising policy-maker must have been aware; or (4) a failure by
> policymakers to provide adequate training or supervision to subordinates to such

an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). In addition, a plaintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury" (internal quotation marks omitted)); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation" (internal quotation marks omitted)); *Johnson v. City of N.Y.*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that "a plaintiff must establish a causal connection—an affirmative link—between the [municipal] policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

"Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Tieman*, 2015 WL 1379652, at *12 (alterations and internal quotation marks omitted) (citing *Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008)); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). Two circumstances expressly identified as constituting a municipal policy are "where there is an officially promulgated policy as that term

10

is generally understood," and "where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken." *Newton*, 566 F. Supp. 2d at 271 (footnote omitted). "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker," *id.*, but nonetheless "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 539 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Tieman*, 2015 WL 1379652, at *16 ("To prevail on this theory of municipal liability . . . a plaintiff must prove that the custom at issue is permanent and well-settled.").

Here, the Amended Complaint alleges three theories of liability that try to satisfy the "policy and custom" requirement:  (i) VTL § 511 is an unenforceable "formal policy"; (ii) Grady is a policymaker who "orchestrated this atrocity"; and (iii) the County failed to properly train its prosecutors. (*See, e.g.*, Am. Compl. 24–29.)

a.   Enforceability of VTL § 511

Plaintiff contends she "has established . . . VTL [§] 511 is invalid" because "there is not an Enactment Clause on the face of the purported law being used against [her]." (Am. Compl. 29). Put simply, Plaintiff is wrong. The legislative bill that was eventually codified as, and the amendments that subsequently shaped, VTL § 511 do each contain an Enactment Clause.[5]

---

[5] Initially enacted in 1985, VTL § 511 has been subsequently amended. *See* James M. Rose, *New York Vehicle & Traffic Law* § 23:12 (2d ed. 2015) ("Beginning November 1, 1985 the Vehicle and Traffic Law was revised to create several types of offenses involving driving with a suspended or revoked license."). The initial version of the legislation containing VTL § 511 unmistakably included the requisite language on its face. *See* 1985 Sess. Law News of N.Y. ch. 756 ("The People of the State of New York, represented in Senate and Assembly, do enact as follows . . .").

Notwithstanding Plaintiff's insistence to the contrary, (*see* Am. Compl 28–29 ("VTL [§] 511 does not have [an] [E]nactment [Clause] on its face in accordance with Article III[,] [§] 13 of the New York State Constitution.")), the New York State Constitution requires an Enactment Clause to appear on the face of each *bill* but in no way mandates, or even suggests, that it appear in every section of code, *see* N.Y. Const. Art. III, § 13 ("The enacting clause of all *bills* shall be 'The People of the State of New York, represented in Senate and Assembly, do enact as follows,' and no law shall be enacted except by bill." (emphasis added)); *see also Noonan v. O'Leary*, 132 N.Y.S.2d 726, 729 (Sup. Ct. 1954) ("The state constitution requires that *all bills* enacted by the Legislature shall contain an enacting clause." (emphasis added)), *aff'd*, 133 N.Y.S.2d 167 (App. Div. 1954).[6] Indeed, an "enacting clause" is that part of the statute that enacts any rule or regulation without regard to the place it may occupy in the statute. 97 N.Y. Jur. 2d Statutes § 58; *see also Mackmull v. Brandlein*, 137 N.Y.S. 607, 611 (App. Div. 1912) ("[T]he 'enacting clause' . . . is that part of the statute which enacts any rule or regulation, no matter what particular place it may occupy in the enactment."). Accordingly, it is immaterial that "there is not an Enactment Clause on the face of the purported law being used against [Plaintiff]," (Am. Compl. 29; *see also id.* at 44 (same)), so long as the requisite text appears on the face of the underlying bill. That is certainly the case here. Prior to the issuance of the citation to Plaintiff in February 2011, VTL § 511 had been most recently amended in 2006, and that amendment also unmistakably includes an Enactment Clause on its face. *See* 2006 Sess. Law News of N.Y. ch. 746 ("The People of the State of New York, represented in Senate and Assembly, do enact as follows . . ."). So too do prior amendments to VTL § 511, as required under the New York State

---

[6] It bears noting that "there is a presumption from the promulgation of a statute that the formal requisites of enactment have been observed." N.Y. Stat. Law § 11 cmt. (McKinney).

Constitution. *See, e.g.*, 2004 Sess. Law News of N.Y. ch. 673; 1996 Sess. Law News of N.Y. ch. 196; 1986 Sess. Law News of N.Y. ch. 227. The inclusion of the requisite language in these various versions of the underlying bills affirm that the New York State legislature undertook the proper steps to validate "the purported law being used against . . . Plaintiff," (Pl.'s Opp'n at unnumbered 6), and "is responsible for these laws," (Am. Compl. 17.) Thus, though "Plaintiff believes the lawful enactment of VTL [§] 511 . . . is nonexistent," (Pl.'s Opp'n at unnumbered 3 (italics omitted)), that belief is clearly misguided. Because the relevant law was properly enacted and remains enforceable (having neither been repealed nor declared unconstitutional), the County's enforcement of this valid driver's license requirement does not give rise to liability of any kind, let alone municipal liability.

The Court could, quite easily, end the discussion here, as the validity of VTL § 511 was the *only* grounds on which Plaintiff claimed that the 2011 prosecution was unlawful. Yet, for the sake of thoroughness, the Court addresses the other theories of liability alleged in the Amended Complaint.

### b. Conduct of Policymaker

As an alternative basis to establish a "policy" or "custom" under *Monell*, Plaintiff alleges that "Grady has had involvement from day one and personal responsibility to the agreements and tactics of his [assistant district attorneys]." (*Id.* at unnumbered 9.) "Where a plaintiff relies not on a formally declared or ratified policy, but rather on the theory that the conduct of a given official represents official policy, it is incumbent on the plaintiff to establish that element as a matter of law." *Jeffes v. Barnes*, 208 F.3d 49, 57–58 (2d Cir. 2000); *see also Baity v. Kralik*, 51 F. Supp. 3d 414, 437 (S.D.N.Y. 2014) (same). Thus, in order for the County to be liable for Grady's actions, Plaintiff must demonstrate that Grady "was a policymaker with respect to the

particular issue involved here." *Baity*, 51 F. Supp. 3d at 437 (internal quotation marks omitted). Furthermore, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Tieman*, 2015 WL 1379652, at *25 (internal quotation marks omitted). Courts have construed "personal involvement" to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (holding that "'direct participation' as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal" (footnote omitted)). In the instant Action, Plaintiff has failed to meet this threshold, as she has not plausibly pled that Grady was personally involved in any alleged violation.

Even assuming Grady's status as a policymaker, the County cannot be held liable under *Monell's* "policymaker" exception for an alleged offense in which that policymaker was not personally involved. *See, e.g.*, *O'Connor v. Barnes*, No. 97-CV-1489, 1998 WL 1763959, at *6 (N.D.N.Y. Mar. 18, 1998) (noting that a county policymaker "must be *personally* and directly involved in the constitutional deprivation for the municipality to be considered the 'moving force' behind the deprivation" and open the county to *Monell* liability).[7] According to the

---

[7] The Court need not accept as true Plaintiff's legal conclusion that Grady is a municipal policymaker. *Jeffes*, 208 F.3d at 57 ("Whether the official in question possessed final policymaking authority is a legal question . . . [that] is to be resolved by the trial judge." (internal quotation marks omitted). In fact, courts in the Second Circuit have routinely held that a municipality cannot be held liable for a district attorney's prosecutorial decisions. *See, e.g.*, *Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 161–62 (E.D.N.Y. 2014) ("[A] county cannot be liable for the acts of a district attorney related to the decision to prosecute or not prosecute an individual" because "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State, not the county."

Amended Complaint, the Huntley Notice "shows [Grady's] direct involvement and knowledge of the case and parties involved." (Am. Compl. 41.) Yet in reality, the only established "involvement" is the inclusion of Grady's name on the face of the Notice, (*see id.* Ex. K), and the Court finds that such a tangential connection falls short of the threshold for personal involvement, *see, e.g.*, *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (finding no personal involvement in the alleged constitutional deprivation without any "allegation that [the defendant] engaged directly in any discriminatory conduct"); *Pittman v. City of N.Y.*, No. 14-CV-4140, 2014 WL 7399308, at *6 (E.D.N.Y. Dec. 30, 2014) (finding no personal involvement for purposes of the plaintiff's false arrest claim where "[n]one of these defendants physically participated in [the] plaintiffs' detention"). Indeed, "supervisory officials may not be held liable merely because they held positions of authority." *O'Dell v. Bill*, No. 13-CV-1275, 2015 WL 710544, at *4 (N.D.N.Y. Feb. 18, 2015).[8]

Apart from the Notice, neither the Amended Complaint nor Plaintiff's opposition papers provide other factual allegations or documents that connect Grady to the criminal proceeding against Plaintiff. To the contrary, Plaintiff offers only the bare assertion that "Grady knowingly promoted the . . . [DA's] [O]ffice to pursue [her] without valid cause, without a law of authority, conspiring with several judges and jurisdiction to deprive life[,] liberty[,] and happiness of [Plaintiff]." (Am. Compl. 88.) This, however, is precisely the type of "legal conclusion couched as a factual allegation" that the Court is "not bound to accept as true." *Iqbal*, 556 U.S. at 678

---

(internal quotation marks omitted)); *Jones v. City of N.Y.*, 988 F. Supp. 2d 305, 317 (E.D.N.Y. 2013) (holding the city "is not a liable party" where "the function at issue . . . is inextricably connected with prosecution of criminal case").

[8] For that same reason, Plaintiff's allegation that some unnamed "County [o]fficials were all well aware of the situation," (Pl.'s Opp'n at unnumbered 3), falls far short of demonstrating personal involvement.

(internal quotation marks omitted); *see also George v. Cty. of Westchester*, No. 13-CV-4511, 2014 WL 1508612, at *8 (S.D.N.Y. Apr. 10, 2014) (The "[p]laintiff's only other allegations relating to [the defendant] are conclusory and, therefore, cannot establish [his] personal involvement."); *Maynard v. City of N.Y.*, No. 13-CV-3412, 2013 WL 6667681, at *4 (S.D.N.Y. Dec. 17, 2013) (The "[p]laintiff conclusorily alleges that [the defendants] were involved . . . by virtue of their positions as 'policymakers' . . . . ; however, this is insufficient to state a plausible claim against them.").[9]

Plaintiff similarly fails to present any specific factual allegations to establish Grady's personal involvement through a failure to train theory. *See Hewitt v. City of N.Y.*, No. 09-CV-214, 2011 WL 441689, at *3 (E.D.N.Y. Feb. 7, 2011) (affirming that a "plaintiff cannot circumvent the limitation on municipal liability for a district attorney's underlying decision whether to prosecute by restyling the complaint as a failure to train"). Instead, the Amended Complaint merely alleges that Grady failed "to train [his assistant district attorneys] to recognize the difference between a valid law and one that is defective." (Am. Compl. 44; *see also* Pl.'s Opp'n at unnumbered 6 ("Grady has supervised and trained these employees to participate in pursuing an [i]ndividual without law and without even a license to apply the purported charges to.").)[10] This, quite simply, is not enough. *See Williams v. Hynes*, No. 15-CV-5480, 2015 WL 5883948, at *3 (E.D.N.Y. Oct. 8, 2015) (dismissing complaint against the district attorney where

---

[9] Even if such bare allegations could suffice, Plaintiff's claim would fail nonetheless. She alleges that "the policy endorsed by [the] County . . . and . . . Grady reflects the use of charging individuals without law," (Am. Compl. 44), but this Court has already discussed the validity of VTL § 511 such that enforcement of this law cannot give rise to municipal liability.

[10] Regardless of the conclusory nature of this allegation, the County cannot be "itself liable for the conduct of the district attorney in failing to properly train his assistants with respect to specific aspects of prosecuting criminals" because there is no evidence it can "control or intervene in such training in any way." *Jones*, 988 F. Supp. 2d at 314.

"although [the] plaintiff alleges that he was 'directly involved in executing this prosecution,' [the] plaintiff provides no allegations to show [the] defendant['s] personal involvement"); *Sam v. City of N.Y.*, No. 14-CV-3253, 2014 WL 6682152, at *3 (E.D.N.Y. Nov. 24, 2014) (dismissing § 1983 claims in the absence of "allegations suggesting that the [d]istrict [a]ttorney had any direct involvement with, knowledge of, or responsibility for the alleged deprivation of [the plaintiff's] civil rights"); *cf. Barrington v. Johnson*, No. 06-CV-2234, 2006 WL 3457816, at *1 (S.D.N.Y. Nov. 28, 2006) ("The mere fact that one defendant is the District Attorney . . . is insufficient to support a finding of personal involvement.").

### c.  Failure to Train

Lastly, Plaintiff alleges that the County "failed and/or neglected to properly train and supervise its employees," which purportedly "has been made evident by the several severe abuses(s) and damage(s) sustained by [Plaintiff]." (Am. Compl. 22.)  Considering that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Tuttle*, 471 U.S. at 822–23 ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."), such bare assertions here fail to satisfy the "policy and custom" requirement necessary to impose liability on the County, *see Stoeckley v. Cty. of Nassau*, No. 15-CV-514, 2015 WL 8484431, at *2 (E.D.N.Y. Dec. 9, 2015) ("While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." (alterations and internal quotation marks omitted)); *Calderon v. City of N.Y.*, —F. Supp. 3d.—, 2015 WL 5802843, at *16 (S.D.N.Y. Oct. 5, 2015) ("[T]he Second Circuit has indicated that *some* non-conclusory

allegation as to deficient training programs is necessary at the pleading stage."), *on reconsideration in part*, 2015 WL 6143711 (S.D.N.Y. Oct. 19, 2015).

"To state a claim for municipal liability based on failure to train, [a] [p]laintiff . . . must allege facts that support an inference that the municipality failed to train its [employees], that it did so with deliberate indifference, and that the failure to train caused his [or her] constitutional injuries." *Tieman*, 2015 WL 1379652, at *22. Thus, "mere allegations of . . . inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom [under *Monell*] unless supported by factual details." *Id.*, at *13; *see also Maynard*, 2013 WL 6667681, at *4 ("Conclusory allegations that there was such a policy or custom, without identifying or alleging supporting facts, is insufficient to state a claim."); *Simms v. City of N.Y.*, No. 10-CV-3420, 2011 WL 4543051, at *2 n.3 (E.D.N.Y. 2011) (noting that "courts in this district have generally required that plaintiffs provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train"), *aff'd*, 480 F. App'x 627 (2d Cir. 2012).

In the instant Action, Plaintiff broadly, and without specific factual allegations, contends that the County "failed to train [its] agents properly." (Am. Compl. 23.) Even at its most specific, the Amended Complaint merely asserts that "[t]here is a failure to train employees to understand and abide [by] established law." (*Id.* at 44 (internal quotation marks omitted)); *see also id.* at 23 ("[The] County. . . [is] liable for improper training, licensing these men and women to abuse the public at will with no sense of compassion or liability.").) Such conclusory allegations are plainly insufficient to state a *Monell* claim. *See Santos v. N.Y. City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff, [the plaintiff's] claims against the [c]ity are dismissed with prejudice." (citation

omitted)); *Johnson*, 2011 WL 666161, at *4 (finding the plaintiff's "unsupported conclusory allegation that the [c]ity failed to train the individual [d]efendants" insufficient to establish municipality liability); *Bradley v. City of N.Y.*, No. 08-CV-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The [c]omplaint's conclusory, boilerplate language—that the [c]ity 'failed to adequately train, discipline, and supervise' employees and 'failed to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees—is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused [the] [p]laintiff to be arrested without probable cause." (alterations and citation omitted)). The Amended Complaint thus lacks factual material from which the Court could reasonably infer that the County failed to train its employees. *See McAllister v. N.Y.C. Police Dep't*, 49 F. Supp. 2d 688, 705 (S.D.N.Y. 1999) ("Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation.").

Because Plaintiff has failed to adequately allege that the County acted pursuant to an official policy or custom, the Court finds the Amended Complaint cannot state a claim for municipal liability. Therefore, the malicious prosecution claim against the County is dismissed.[11]

---

[11] Even assuming, arguendo, the Amended Complaint adequately alleged that the County acted pursuant to an official policy or custom, neither Grady's nor Pasquale's actions would implicate the County. As noted above, in making any decisions about Plaintiff's criminal prosecution, Grady and Pasquale would have been "represent[ing]" the State, not the [C]ounty." *Norton*, 47 F. Supp. 3d at 162; *see also McLaurin v. New Rochelle Police Officers*, 368 F. Supp. 2d 289, 295 (S.D.N.Y. 2005) (holding that the plaintiff's "assertions of malicious prosecution by the . . . District Attorney form no basis for county liability").

3. Claims Against Pasquale and Grady

According to the Amended Complaint, Grady and Pasquale are "being sued individually, personally[,] and in [their] official capacity." (Am. Compl. 5.) No matter the theory of liability, Plaintiff's causes of action against Grady and Pasquale fail on the bases of sovereign immunity and absolute prosecutorial immunity.

a. Eleventh Amendment Immunity

Some of the factual allegations against Grady and Pasquale clearly stem from their prosecutorial duties, as Plaintiff contends that "[Individual] [D]efendants have falsified information and presented a known fraud to the court to prosecute an [i]ndividual with no lawful means to do so." (*Id.* at 59.) Indeed, the Amended Complaint specifically asserts that Grady and Pasquale "were acting within the scope of their presumed duties as employees being enriched and compensated by the . . . County when depriving [her] of her rights, liberty, and freedom." (*Id.* at 30.) With respect to such official-capacity claims, both Grady and Pasquale, as the district attorney and assistant district attorney, are entitled to Eleventh Amendment immunity against suit. *See Shmueli v. City of N.Y.*, 424 F.3d 231, 236 (2d Cir. 2005) ("[A] state prosecuting attorney who acted within the scope of his [or her] duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." (italics and internal quotations marks omitted)); *Bowers v. Kelly*, No. 13-CV-6265, 2015 WL 2061582, at *5 (S.D.N.Y. May 4, 2015) (same).

As already noted, the prosecutor of a criminal matter "represents the State not the county," *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), and is therefore entitled to invoke sovereign immunity, *see Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 535–36 (2d Cir. 1993); *see also Campos v. Zuntag*, No. 15-CV-2862, 2015 WL 6972062, at *4 (E.D.N.Y. Nov. 9, 2015)

20

("This [sovereign] immunity extends to district attorneys and assistant district attorneys prosecuting criminal matters."). In other words, "a suit for money damages against a district attorney or his or her assistant district attorneys, in their official capacities, is actually a suit against New York State, and is barred by the Eleventh Amendment." *Sharp v. Morgenthau*, No. 08-CV-5919, 2010 WL 339767, at *4 (S.D.N.Y. Jan. 25, 2010). Thus, to the extent Plaintiff brings suit against Grady and Pasquale on the basis of their decision to prosecute her, or in their capacities as state officials, Grady and Pasquale are entitled to Eleventh Amendment immunity. *See Ying Jing Gan*, 996 F.2d at 536 (reaffirming that the Eleventh Amendment bars official-capacity suits based "on decisions whether or not, and on what charges, to prosecute"). Because the Amended Complaint requests only monetary damages against Grady and Pasquale, (*see* Am. Compl. 85–86, 88), any official-capacity claims against them must be dismissed on the basis of sovereign immunity.

### b. Prosecutorial Immunity

Plaintiff also alleges Grady and Pasquale "acted as [i]ndividuals bullying . . . Plaintiff in the court room [sic] to comply with a jurisdiction that was irrelevant." (Pl.'s Opp'n at unnumbered 8.)

Prosecutors are entitled to absolute immunity from damages suits under § 1983 when "function[ing] as advocates for the state in circumstances intimately associated with the judicial phase of the criminal process." *Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004) (internal quotation marks omitted); *see also Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995) ("Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." (internal quotation marks omitted)). Because "[t]he initiation and pursuit of a criminal prosecution are

21

quintessential prosecutorial functions, . . . a prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction." *Sharp*, 2010 WL 339767, at \*3 (alterations and internal quotation marks omitted); *see also Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995) ("[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is intimately associated with the judicial phase of the criminal process." (internal quotation marks omitted)). In keeping with this bedrock principle, "[i]t is well-established in the Second Circuit that claims of malicious prosecution relate to a prosecutor['s] role as an advocate; and, thus, prosecutors are absolutely immune from malicious prosecution claims." *Del Col v. Rice*, No. 11-CV-5138, 2012 WL 6589839, at \*5 (E.D.N.Y. Dec. 18, 2012) (alteration and internal quotation marks omitted), *adhered to on reconsideration*, 2013 WL 4052867 (E.D.N.Y. Aug. 12, 2013); *see also Shmueli*, 424 F.3d at 237–38 (reaffirming that prosecutors are absolutely immune from malicious prosecution claims because the alleged conduct involves their roles as advocates); *Jackson v. Seewald*, No. 11-CV-5826, 2013 WL 149341, at \*7 (S.D.N.Y. Jan. 14, 2013) (report and recommendation) (noting that absolute immunity covers "the malicious prosecution claims brought under both federal and state law").

Notably, absolute immunity is "not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy." *Shmueli*, 424 F.3d at 237–38; *see also Bernard*, 356 F.3d at 503 ("[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused."). "However, a prosecutor may lose absolute immunity even for acts performed in his [or her] role as an advocate if the prosecutor acts in the 'clear absence of all jurisdiction' or 'without any

22

colorable claim of authority.'" *Anilao v. Spota*, 774 F. Supp. 2d 457, 478 (E.D.N.Y. 2011) (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)). In determining "whether a given prosecution was clearly beyond the scope of that jurisdiction, or whether instead there was at least a colorable claim of authority," a court must "inquire whether the pertinent statutes may have authorized prosecution for the charged conduct," *Shmueli*, 424 F.3d at 237, and, "[i]f they do not, absolute immunity must be denied," *Bernard*, 356 F.3d at 504. Yet, "if the laws *do* authorize prosecution for the charged crimes, a court will further consider whether the defendant has intertwined his exercise of authorized prosecutorial discretion with other, unauthorized conduct." *Id.* (emphasis added).

In the instant Action, Plaintiff alleges that "Pasqual[e] has personally engaged in false charges, ignored facts, pursued [Plaintiff] with no lawful reason to do so . . . ." (Am. Compl. 32.) Liberally construed, the Amended Complaint seems to contend that, although Grady was not personally involved in Plaintiff's prosecution, he ultimately was responsible for it. (*See, e.g., id.* at 29 ("The policy endorsed by . . . Grady reflects charging individuals without law.").)[12] It is thus clear that Grady's and Pasquale's alleged conduct—the decision of whether to prosecute Plaintiff for violating VTL § 511—was "intimately associated with the judicial phase of the criminal process." *Bernard*, 356 F.3d at 502. Taking the facts as alleged in the Amended Complaint to be true, the Court nonetheless concludes Grady and Pasquale are entitled to absolute immunity for the conduct at issue.

---

[12] The fact that, as discussed above, Plaintiff fails to allege any personal involvement on the part of Grady further merits dismissal of her claims against him. *See Haygood v. City of N.Y.*, 64 F. Supp. 2d 275, 279–80 (S.D.N.Y. 1999) ("The complaint's passing mentions of [the district attorney] do not allege the personal involvement in a deprivation of federal constitutional rights which is a sine qua non of liability under [§] 1983." (italics omitted)).

To overcome this assertion of absolute immunity, Plaintiff alleges that Grady and Pasquale acted without any "[j]udicial [a]uthority" or "government authority." (Pl.'s Opp'n at unnumbered 8; *see also* Am. Compl. 49 (claiming "they cannot hide behind [g]overnment [i]mmunity when they act outside of their jurisdiction").) Notwithstanding Plaintiff's contention that she "has established . . . VTL [§] 511 is invalid," (*id.* at 44), it is simply not true that either Grady or Pasquale operated in the clear absence of jurisdiction in connection with the criminal proceeding against Plaintiff. To the contrary, as already discussed, prosecutors in New York have the authority to prosecute those who operate a motor vehicle without a license on a public roadway. *See* N.Y. Veh. & Traf. Law § 511 (defining "offense of aggravated unlicensed operation of a motor vehicle" whereby a "person operates a motor vehicle upon a public highway while knowing or having reason to know that such person's license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner"). Moreover, the Amended Complaint's generalized allegations fail to adequately allege that either Grady or Pasquale functioned in any way that would prevent immunity from attaching. (*See, e.g.*, Am. Compl. 88 (claiming Grady "pursued [her] with no lawful or legal authority to do so").) The Court thus finds Plaintiff's "[c]onclusory allegations that [D]efendants went beyond the scope of their jurisdiction, without authority of law[,] are insufficient to withstand a motion to dismiss." *Bender v. City of N.Y.,* No. 09-CV-3286, 2011 WL 4344203, at *7 (S.D.N.Y. Sept. 14, 2011) (internal quotation marks omitted). Accordingly, absolute immunity shields Grady and Pasquale from any individual-capacity suits for their alleged malicious prosecution of Plaintiff.

24

4. Lack of Favorable Termination

Even putting aside the various grounds discussed above, the Amended Complaint would not survive the instant Motion. As noted, "[t]ermination of the criminal charges in plaintiff's favor is an essential element of [a malicious prosecution] claim," *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995), yet Plaintiff cannot satisfy this "essential element" here. "Where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence." *Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002); *see also Lozada v. Weilminster*, 92 F. Supp. 3d 76, 96 (E.D.N.Y. 2015) ("To state a claim for malicious prosecution, a plaintiff must demonstrate a final termination of the criminal proceeding in her favor, or at least not inconsistent with [her] innocence." (alteration in original) (internal quotation marks omitted)). The Amended Complaint, however, has failed to allege any facts whatsoever that could satisfy this element of Plaintiff's malicious prosecution claim. *See Russell*, 68 F.3d at 36 (noting that a favorable termination of a case occurs only when there is a decision on the merits or a final disposition to indicate the accused is not guilty). To the contrary, Plaintiff readily admits that the East Fishkill Justice Court has not yet adjudicated the violations of VTL § 511 for which she was charged in February 2011. (*See* Am. Compl. 9.) She further concedes, in complaining of the "multiple prosecutions" against her, that "[t]he more recent cases are unresolved," (*id.* at 39), which unmistakably suggests neither a final disposition nor an indication of innocence.[13] Because the underlying criminal proceeding did not terminate, let alone

---

[13] As previously noted, Plaintiff's malicious prosecution claim is confined to events that occurred after she was issued a citation in February 2011. (*See* Am. Compl. 8, 22, 31, 47–50, 66.) Even if the Amended Complaint presented allegations regarding any prior criminal proceedings, Plaintiff would fail to sustain a claim for malicious prosecution without any of the

terminate in Plaintiff's favor, the Amended Complaint cannot state a claim for malicious

prosecution under § 1983, notwithstanding the barriers discussed above.

### III.  Conclusion

For the reasons set forth, the Court grants Moving Defendants' Motion To Dismiss with

prejudice.[14]  The Clerk of the Court is respectfully directed to terminate the pending Motion.

(Dkt. No. 89.)

SO ORDERED.

Dated:        February 26, 2016
              White Plains, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

---

proceedings terminating in her favor.  (*See id.* at 67 (claiming the "County has used fraudulent information time and time again to obtain convictions" against her).)

[14] While "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once," *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (italics omitted); *see also McGee v. Pallito*, No. 10-CV-11, 2014 WL 360289, at *12 (D.Vt. Feb. 3, 2014) (noting that "[t]he Second Circuit has cautioned that district courts should not dismiss pro se complaints with prejudice without granting leave to amend *at least once*" (emphasis added) (italics omitted)), here the Court has already granted Plaintiff leave to amend, (*see* Dkt. No. 72).  Moreover, "[t]he problem with [her] causes of action is substantive; better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012) (dismissing with prejudice a pro se complaint that was "not simply 'inadequately or inartfully pleaded,' but rather contain[ed] substantive problems such that an amended pleading would be futile"), *aff'd*, 523 F. App'x 32 (2d Cir. 2013).

26