UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELE ELLEN SCALPI,

Plaintiff,

v.

TOWN OF EAST FISHKILL, OFFICER
TINA AMORIM, SERGEANT ERIC
FIELDS, FREDERICK D. ROMIG,
COUNTY OF DUTCHESS, WILLIAM
GRADY, MELISSA KNAPP PASQUALE,
COUNTY OF ORANGE, COMMISSIONER
BARBARA J. FIALA, GOVERNOR
ANDREW CUOMO, STEVEN K.
PATTERSON,

Defendants.

Case No. 14-CV-2126 (KMK)

OPINION & ORDER

Appearances:

Michelle Ellen Scalpi
West Haven, CT
*Pro se Plaintiff*

Susan Z. Stockburger, Esq.
Langdon C. Chapman, Esq.
Orange County Department of Law
Goshen, NY
*Counsel for Defendant Orange County*

KENNETH M. KARAS, District Judge:

Michelle Ellen Scalpi ("Plaintiff"), proceeding pro se, filed the instant Amended

Complaint pursuant to 42 U.S.C. § 1983, alleging civil rights violations against Orange County

("the County" or "Moving Defendant") and other municipalities and public officials.  (Am.

Compl. (Dkt. No. 75).)  Before the Court is Moving Defendant's Motion To Dismiss the

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion").  (Dkt. No. 100).)  For the following reasons, the Motion is granted.

## I.  Background

A.  Factual Background

The factual allegations that follow are derived from Plaintiff's Amended Complaint. While the Court will sometimes refer to Plaintiff's contentions as "alleged," it nonetheless treats them as true for purposes of the instant Motion.

Plaintiff "was pulled over [in] February of 2011" for driving without a license on a public roadway in the Town, in violation of New York State Vehicle and Traffic Law ("VTL") § 511. (Am. Compl. 8 (Dkt. No. 75); *see also id.* Ex. E (VTL § 511).)[1]  She claims that her arrest and subsequent prosecution were intrinsically invalid because the state law imposing the driver's license requirement is invalid.  (*See, e.g., id.* at 17–18 ("Without an enacting clause the laws referenced . . . have no official evidence that they are from an authority which the individual is subject to or required to obey." (italics omitted)).)  During the course of the criminal prosecution stemming from this charge, Plaintiff failed to appear for a required court appearance on April 24, 2013 at the Town of East Fishkill Justice Court, which resulted in the issuance of a bench warrant for her arrest, signed by Defendant Justice Frederick D. Romig ("Justice Romig").  (*Id.* at 9.)

On March 17, 2014, Plaintiff was driving in Columbia County, New York when she was pulled over by a Town of East Fishkill police officer and arrested pursuant to that bench warrant.

---

[1] For the sake of clarity, the Court cites to the page numbers of Plaintiff's Amended Complaint, rather than the inconsistent paragraph numbering.

The Amended Complaint includes a number of attachments with inconsistent pagination. (*See* Dkt. No. 75-1.)  To avoid confusion, the Court's references to page numbers of that filing correspond to the ECF page numbers stamped on the top of each page.

(*Id.* at 8–9.)[2]  The officer, later identified as Maria Amorim of the East Fishkill Police

Department ("Amorim"), allegedly searched Plaintiff in a "rough and excessive" manner that

caused Plaintiff pain and discomfort.  (*Id.* at 9.)  Upon being transported to the East Fishkill

Police Department, Plaintiff requested to use the bathroom facilities, and, though her request was

initially denied, Amorim later "granted permission reluctantly."  (*Id.* at 9–10.)  When Amorim

went to remove her handcuffs, Plaintiff suffered "extreme shooting pain in [her] left shoulder" as

Amorim twisted her left arm, forced it to the side, and quickly pushed it upwards.  (*Id.* at 10.)

Plaintiff used bathroom and then requested but was repeatedly denied a sanitary napkin.  (*Id.* at

10–11.)  Plaintiff was also denied water, despite "several times complaining of dizziness and

dehydration," until just prior to leaving the East Fishkill Police Department.  (*Id.* at 11.)[3]

Plaintiff "was then transported to Montgomery NYS Trooper Barracks" for "another

warrant from the Town of Newburgh Court," also relating to a prior violation of VTL § 511.

(*Id.*)  There, she was again allegedly denied water, food, use of bathroom facilities, and a

sanitary napkin.  (*Id.* at 11–12.)  Plaintiff was taken to the Town of Newburgh Court, where she

"was granted bail of $400.00."  (*Id.* at 12.)  However, she was not allowed to post bail at the

courthouse, despite having "family in court with bail in hand," and instead was sent to the

Orange County Jail ("Jail"), arriving at approximately 7:45 p.m.  (*Id.*)  Plaintiff requested water

and use of the bathroom, but, despite her complaints of dizziness, these requests were denied.

(*Id.*)  Eventually Plaintiff was granted permission to use the bathroom facilities, having

---

[2] For the sake of clarity, the Court cites to the page numbers of Plaintiff's Amended
Complaint, rather than the inconsistent paragraph numbering.

[3] Though the Court provides these factual allegations by way of background, it bears
noting that Plaintiff's arrest and subsequent detention at the East Fishkill Police Department
occurred in Dutchess, not Orange, County.  It is only the events alleged by Plaintiff to have taken
place at the Jail that implicate Moving Defendant.

explained she was in "pain from holding it for hours." (*Id.*) Plaintiff also complained of a

painful "burning sensation in [her] gentile [sic] area." (*Id.*) Though her appeals were "denied

several times," she ultimately received a sanitary napkin from a female corrections officer at the

Jail. (*Id.* at 12–13.)

According to the Amended Complaint, Plaintiff sat in a "holding cell with no toilet

paper, . . . food, water[,] or medical care for [her] gentile [sic] area, dizziness[,] or hurt shoulder"

for several hours. (*Id.* at 13.) She was released from the Jail later that night. (*Id.*) In the

subsequent days, Plaintiff visited the hospital twice, saw her primary care physician, and went to

two orthopedic specialists to address "[v]aginal pain, shoulder pain[,] and dehydration." (*Id.* at

13, 15.)

B. Procedural History

Plaintiff commenced the instant Action on March 26, 2014 against Orange County,

Dutchess County, Dutchess County District Attorney William Grady ("Grady"), Dutchess

County Assistant District Attorney Melissa Knapp Pasquale, the Town of East Fishkill, Amorim,

Sergeant Eric Fields, Justice Romig, Commissioner Barbara J. Fiala, Governor Andrew Cuomo,

and Steven K. Patterson. (Dkt. No. 1.) Thereafter, counsel for all named defendants filed

motions to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b).

(Dkt. Nos. 40, 42, 47, 52.) Without rendering a decision on these motions, the Court granted

Plaintiff's request for leave to amend her Complaint. (Dkt. Nos. 72, 74.) Plaintiff accordingly

filed her Amended Complaint on December 31, 2014. (Dkt. No. 75.)

Pursuant to a scheduling order adopted at a pre-motion conference held before the Court

on March 10, 2015, (Dkt. No. 88), Moving Defendant filed its Motion To Dismiss and

supporting papers on April 10, 2015, (Dkt. Nos. 100–02), Plaintiff filed her opposition papers on

June 1, 2015, (Dkt. No. 111), and Moving Defendant filed its reply on June 9, 2015, (Dkt. No.
120).[4]

## II. Discussion

A. Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations

and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement." *Id.* (alterations and internal quotation marks omitted).

Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the

line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense. But where the well-pleaded facts do not permit the court to infer more than the

---

[4] The Court resolves the Motions to Dismiss of the other named defendants in separate
Opinions issued contemporaneously with this Opinion.

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In addition, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [her] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). In deciding a motion to dismiss a pro se complaint, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint,"

6

*Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)

(internal quotation marks omitted), including "documents that a pro se litigant attaches to [her]

opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec.

15, 2010); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court

may consider "factual allegations made by a pro se party in his papers opposing the motion"

(italics omitted)). However, "the liberal treatment afforded to pro se litigants does not exempt a

pro se party from compliance with relevant rules of procedural and substantive law." *Bell v.

Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also

Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are

required to inform themselves regarding procedural rules and to comply with them." (italics and

internal quotation marks omitted)).

B. Analysis

Plaintiff broadly asserts a variety of constitutional claims against the individuals and

municipalities named in her Amended Complaint. (*See* Am. Compl. 2.) As to Orange County

specifically, Plaintiff seeks "compensatory and punitive damages . . . for mistreatment,

deprivation, unlawful detention, strip search, humiliation, embarrassment, lack of health care,

lack of necessity such as water, food[,] and sanitary needs, pain and suffering, deprivation of

rights, emotional distress[,] and mental anguish." (Am. Compl. 88.) In interpreting the

Amended Complaint to raise the strongest arguments that it may suggest, *see Sykes*, 723 F.3d at

403, the Court recognizes claims for unlawful imprisonment, (*see, e.g.*, Am. Compl. 28),

unconstitutional conditions of confinement, (*see, e.g.*, *id.* at 27–28), and conspiracy to violate

Plaintiff's constitutional rights, (*see, e.g.*, *id.* at 74). Regardless of the particular constitutional

fouls Plaintiff is asserting, her allegations against the County, "a municipality of New York

7

State," (*id.* at 6), cannot survive the instant Motion because she fails both to satisfy the requirements of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and to state any viable claim for a rights violation.

 1. *Monell* Liability

 A municipal defendant "cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691 (italics omitted); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (reaffirming that "a municipality cannot be held liable on a respondeat superior basis for the tort of its employee" (italics omitted)). Rather, for a plaintiff to prevail on a § 1983 claim against a municipal employer, she must satisfy the requirements set forth in *Monell* and its progeny, which adhere to the well-settled principle that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691; *see also Hunter v. City of N.Y.*, 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("In order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.").

 A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).  In addition, a plaintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury" (internal quotation marks omitted)); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y. Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation" (internal quotation marks omitted)); *Johnson v. City of N.Y.*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that "a plaintiff must establish a causal connection—an affirmative link—between the [municipal] policy and the deprivation of his [or her] constitutional rights" (internal quotation marks omitted)).

"Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Tieman*, 2015 WL 1379652, at *12 (alteration and internal quotation marks omitted); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").  There are two circumstances that courts have expressly identified as constituting a municipal policy: "where there is an officially promulgated policy as that term is generally understood," and "where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final

9

policymaking authority in the area in which the action was taken." *Newton v. City of N.Y.*, 566

F. Supp. 2d 256, 271 (S.D.N.Y. 2008) (footnote omitted).  "A municipal 'custom,' on the other

hand, need not receive formal approval by the appropriate decisionmaker," *id.*, but nonetheless

"may fairly subject a municipality to liability on the theory that the relevant practice is so

widespread as to have the force of law," *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529,

539 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Tieman*, 2015 WL 1379652, at

*16 ("To prevail on this theory of municipal liability, . . . a plaintiff must prove that the custom

at issue is permanent and well-settled.").

      Construed liberally, the Amended Complaint alleges two theories of liability that seek to

satisfy the "policy and custom" requirement:  (a) Orange County had a formal policy "to

[v]iolate clearly established law"; and (b) Orange County failed to properly train its employees.

(*See* Am. Compl. 23, 26.)[5]

        a.  Formal Policy

      Although Plaintiff broadly alleges an Orange County "custom, policy, or practice" of

depriving individuals of their rights, (*id.* at 23), she fails to present any facts about any formal

policy or custom that could satisfy the requirements of *Monell*.  In fact, many of her allegations

against Orange County seek to establish liability "under the "[d]octrine of [r]espondent [sic]

[s]uperior for the acts of [its] employees committed within the scope of their employee duties."

(*Id.* (italics omitted); *see also id.* at 26 (alleging that "Orange County is responsible under

---

    [5] Though her allegations against Dutchess County seem to allege a theory of liability
based on Grady's purported policymaking authority, (*see* Am. Compl. 88), Plaintiff does not
assert the existence of an Orange County policymaker responsible for any unconstitutional policy
relevant to the causes of action here.  In the absence of any alleged act taken against her by an
Orange County employee who has "final policy making authority in the area in which the action
was taken," *Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 565 (S.D.N.Y. 2012), the Court
need not address such grounds for municipal liability.

respondent [sic] superior as [its] policies go against [f]ederal [l]aw").)  This assertion is

unavailing, for, as noted above, it is well established that, under § 1983, "a municipality cannot

be held liable solely for the acts of others."  *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 36

(2010) (internal quotation marks omitted); *see also Jones*, 691 F.3d at 80.  As a legal conclusion,

and an incorrect one at that, Plaintiff's contention that Orange County is "liable" and

"responsible for the actions under [its] jurisdiction by any and all agents," (Am. Compl. 74),

warrants no deference by the Court.  Alleged conduct by a limited number of employees, (*see,

e.g.*, Pl's Opp'n to Mot. ("Pl.'s Opp'n") at unnumbered 3 (Dkt. No. 111) ("Medical records

indicate two severe injuries ignored by the [C]ounty employees . . . .")), simply cannot support

municipal liability, *see Brogdon*, 200 F. Supp. 2d at 427; *cf. Connick* v. *Thompson*, 563 U.S. 51,

60 (2011) (noting that, under § 1983, governmental bodies are not vicariously liable for their

employees' actions).

Apart from this reliance on the doctrine of respondeat superior, Plaintiff offers only

sweeping claims that Moving Defendant "enforce[es] policies in lieu of well[-]established law."

(Am. Compl. 23.)  While Plaintiff alleges that "Orange County . . . [has] displayed patterns

depicted in each and every Cause of Action herein," (*id.* at 74), such bare assertions, without

more, cannot support municipal liability.  And in the instant Action, the Amended Complaint

continually fails to offer more.

For example, Plaintiff asserts that Orange County "created policy and custom to allow

pretrial detentions against orders of the [j]udiciary [b]ranch."  (*Id.* at 27; *see also id.* at 62

(same).)  While more specifically contending that "Orange County failed to accept bail until [the

Jail] admitted Plaintiff and secured funding for that admission," (Pl.'s Opp'n at unnumbered 5),

the Amended Complaint presents no factual support for these bare references to an unidentified

11

and undefined municipal policy, *see Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (holding

that "complaints relying on the civil rights statutes are insufficient unless they contain some

specific allegations of fact indicating a deprivation of rights, instead of a litany of general

conclusions that shock but have no meaning"). In essence, Plaintiff does no more than complain

of "waiting for nearly 5 hours" at the Jail, (Am. Compl. 27), and "[a] *Monell* claim cannot go

forward based on conclusory claims regarding a single incident without more evidence that

connects this incident to a municipal policy or practice," *Pittman v. City of N.Y.*, No. 14-CV-

4140, 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30, 2014); *see also 5 Borough Pawn, LLC v. City

of N.Y.*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing a *Monell* claim where the

"plaintiffs fail[ed] to allege any facts showing that there is a [c]ity policy—unspoken or

otherwise—that violates the Federal Constitution").[6]  The Court thus finds insufficient facts to

give rise to an inference that the allegedly excessive detention was the result of any official

municipal policy or custom sufficient to subject the County to liability.  *See Ricciuti v. N.Y.C.

Transit Auth.*, 941 F.2d 119, 124 (2d Cir. 1991) (affirming "that an allegation of municipal

policy or custom would be insufficient if wholly conclusory"); *Gordon v. City of N.Y.*, No. 10-

CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing a *Monell* claim where

the "allegation is unsupported by anything other than the facts of what occurred in his particular

case").

---

[6] The Amended Complaint both complains of "waiting for over 5 hours," (Am. Compl. 25, 64), and of "waiting for nearly 5 hours," (*id.* at 27, 61).  The Court addresses this minor discrepancy by assuming an approximate wait of five hours and analyzing Plaintiff's claims accordingly.  It bears noting that, according to Orange County, "Plaintiff's total time spent at the Jail consisted of less than four hours," (Decl. of Susan Z. Stockburger, Esq. ¶ 10 (Dkt. No. 101)), but the timeline presented by the Amended Complaint suggests somewhere between four and five hours, (*see* Am. Compl. 12–13 (noting Plaintiff entered the Jail at approximately 7:45 p.m. and was released from the Jail around 12 a.m.)).  The difference might be material to Plaintiff, but it is not to the law.

In an additional effort to satisfy the requirements of *Monell*, Plaintiff asserts that the Jail

"acted with deliberate indifference . . . which is policy, custom[,] and pattern set forth by [the]

County." (Am. Compl. 27.)  Again, however, the mere assertion of the existence of policy is not

enough. *See Maynard v. City of N.Y.*, No. 13-CV-3412, 2013 WL 6667681, at *4 (S.D.N.Y.

Dec. 17, 2013) ("Conclusory allegations that there was such a policy or custom, without

identifying or alleging supporting facts, is insufficient to state a claim."); *McAllister v. N.Y.C.

Police Dep't*, 49 F. Supp. 2d 688, 705 (S.D.N.Y. 1999) ("Conclusory allegations of a

municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell*

claim, absent evidence to support such an allegation.").  According to the Amended Complaint,

the Jail "subject[ed] [Plaintiff] to strip searches, medical neglect, neglect of necessities, [and] left

[her] suffering in extreme pain far measured above 'discomfort' with a severe infection of the

genitals as well as a ruptured shoulder with possible fractures."  (Am. Compl. 27; *see also id.* at

61 (same).)  Accepting these allegations as true, the Court nonetheless cannot plausibly infer the

existence of any formal custom or policy of constitutionally inadequate conditions of

confinement; there simply are not enough specific allegations from which to do so.  *See Gordon*,

2012 WL 1068023, at *4; *see also 5 Borough Pawn*, 640 F. Supp. 2d at 299 (concluding that the

"plaintiffs' pleading . . . does not unlock the doors of discovery because their assertion that the

[c]ity has an unconstitutional policy is based on nothing more than their unsupported

supposition" (citation and internal quotation marks omitted)).[7]  Thus, without more, such "naked

---

[7] The Court notes that Plaintiff has not sued any individual Orange County employee
regarding the conditions of her confinement. *See Green v. Bauvi*, 792 F. Supp. 928, 941
(S.D.N.Y. 1992) (holding that an inmate may recover damages for unconstitutional conditions of
confinement *only* "from the persons who created or maintained those conditions or from the
persons who operated or were in charge of the facility").

assertions" of unconstitutional conditions will not sustain a cause of action against the County. *See Iqbal*, 556 U.S. at 678 (alteration omitted).

Lastly, Plaintiff appears to allege VTL § 511 as another municipal policy giving rise to the purported violations of her constitutional rights. (*See* Am. Compl. 29 ("The policy or custom in which the municipality acted on is unconstitutional on its face." (citing Ex. F (Plaintiff's DMV Abstract)).) In challenging the validity of that legislation, the Amended Complaint contends that "Orange County['s] customs and policies . . . allow for the charges and imprisonment of [i]ndividuals without enacted law." (*Id.* at 28; *see also id.* at 44 (alleging that "the policy endorsed by . . . [the] County . . . reflects the use of charging individuals without law").) That argument necessarily fails. For one, as discussed by this Court in separate Opinions stemming from the Amended Complaint, VTL § 511 was indeed properly enacted (and therefore enforceable against Plaintiff). Yet even assuming, arguendo, that the underlying legislation was "un-enacted," (Am. Compl. 21), VTL § 511 was created by the New York State legislature, *not* by the County. *See, e.g.*, 2006 Sess. Law News of N.Y. ch. 746. A state statute generally cannot be considered a municipal policy for purposes of *Monell*, even if enforced by municipal employees. *See Vives v. City of N.Y.*, 524 F.3d 346, 353 (2d Cir. 2008) (holding "that a mere municipal directive to enforce all state and municipal laws [does not] constitute[] a city policy to enforce a particular unconstitutional statute"); *accord Whitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000) (emphasizing "that the [municipal entity] cannot be liable for merely implementing a policy created by the state [entity]"). For these reasons, VTL § 511 does not constitute a formal policy that can subject Orange County to liability.

On the whole, the Amended Complaint is devoid of factual support for Plaintiff's assertion of a formal policy. Therefore, while Plaintiff alleges that "[t]his policy, custom and

pattern caused unnecessary humiliation, pain, suffering and mental distress," (Am. Compl. 27),

the Court finds no particular policy or custom to sustain municipal liability against the County.

> b.  Failure to Train

As another potential theory of liability under *Monell*, Plaintiff contends that the County is

"liable for improper training, licensing these men and women to abuse the public at will with no

sense of compassion or liability." (*Id.* at 23.)  However, given that a "municipality's culpability

for a deprivation of rights is at its most tenuous where a claim turns on a failure to train,"

*Connick*, 563 U.S. at 61; *see also Tuttle*, 471 U.S. at 822–23 (noting that "a 'policy' of

'inadequate training'" is "far more nebulous, and a good deal further removed from the

constitutional violation, than was the policy in *Monell*"), this sort of conclusory allegation fails to

satisfy the "policy and custom" requirement necessary to hold the County liable, *see Tieman*,

2015 WL 1379652, at *22 ("To state a claim for municipal liability based on failure to train, [a]

[p]laintiff . . . must allege facts that support an inference that the municipality failed to train its

[employees], that it did so with deliberate indifference, and that the failure to train caused his [or

her] constitutional injuries." ); *Simms v. City of N.Y.*, No. 10-CV-3420, 2011 WL 4543051, at *2

n.3 (E.D.N.Y. Sept. 28, 2011) (noting that "courts . . . have generally required that plaintiffs

provide more than a simple recitation of their theory of liability, even if that theory is based on a

failure to train"), *aff'd*, 480 F. App'x 627 (2d Cir. 2012).

Here, Plaintiff broadly alleges that "Orange County failed and/or neglected to properly

train and supervise its employees . . . with respect to individual rights as protected by the

Constitution[,] [which] has been made evident by the several severe abuse(s) and damage(s)

sustained by [Plaintiff]." (Am. Compl. 22.)  This, however, is far from enough to sustain

municipal liability based on a purported failure to train. *See Santos v. N.Y. City*, 847 F. Supp. 2d

573, 577 (S.D.N.Y. 2012) ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff, [the plaintiff's] claims against the [c]ity are dismissed with prejudice." (citation omitted)); *Johnson*, 2011 WL 666161, at *4 (finding the plaintiff's "unsupported conclusory allegation that the [c]ity failed to train the individual [d]efendants" insufficient to establish municipality liability); *Bradley v. City of N.Y.*, No. 08-CV-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The [c]omplaint's conclusory, boilerplate language—that the [c]ity 'failed to adequately train, discipline, and supervise' employees and 'failed to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees—is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused [the] [p]laintiff to be arrested without probable cause." (alterations and citation omitted)).[8]

Because Plaintiff fails to adequately allege that the County acted pursuant to an official policy or custom, the Court finds that the Amended Complaint does not comply with the requirements of *Monell* and therefore cannot establish municipal liability. Accordingly, Orange County is entitled to dismissal of any claims against it.

---

[8] Citing to VTL § 511, Plaintiff asserts that "[t]he defendants herein created/enforced [a] policy, then educated and trained agents of the [defendant] municipalities to ignore well established law." (Am. Compl. 26 (third alteration in original).) It is unclear exactly to which of the named defendants Plaintiff refers, but even assuming this allegation implicates Orange County, this bare assertion is similarly insufficient to demonstrate the existence of a municipal policy or custom. *See Johnson*, 2011 WL 666161, at *4 (holding that a complaint "contain[ing] only an unsupported conclusory allegation that the [c]ity failed to train the individual [d]efendants" could not withstand a motion to dismiss because the plaintiff did not plead any facts that "plausibly allege[d] a specific deficiency in the training or supervision program" (internal quotation marks omitted)).

2.  <u>Failure to State a Claim</u>

*Monell* aside, the Amended Complaint fails to state any viable claim against the County. Plaintiff's bare "labels and conclusions" of unlawful imprisonment, unconstitutional conditions of confinement, and conspiracy fall short of raising her right to relief above the speculative level. *Twombly*, 550 U.S. at 555.[9]

a.  <u>Unlawful Imprisonment</u>

The Amended Complaint alleges that the Jail "fail[ed] to collect the bail from parties waiting for nearly 5 hours[,] at which time [Plaintiff] was unlawfully incarcerated." (Am. Compl. 27.)  However, Plaintiff's bare assertion that "[t]he [u]nlawful [i]mprisonment of [Plaintiff] is clear" does not make it so.  (*Id.* at 65.)[10]  Rather, the Court finds Plaintiff has failed to plead a violation of her constitutional rights.

---

[9] To the extent Plaintiff sought to assert a claim of false arrest against Orange County, the Court re-emphasizes that she was arrested on March 17, 2014 by Amorim, a police officer within Dutchess County. (Am. Compl. 9.)  Yet, even if such a cause of action could implicate Moving Defendant, Plaintiff's acknowledgement that she "was arrested on a warrant from the Town of East Fishkill" necessarily defeats such a claim. (*See id.*)  Probable cause "is a complete defense to an action for false arrest, . . . whether that action is brought under state law or under § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks omitted); *see also McKay v. City of N.Y.*, 32 F. Supp. 3d 499, 505 (S.D.N.Y. 2014) (same). And, "[p]robable cause is presumed to exist if a plaintiff is arrested pursuant to an arrest warrant." *Williams v. City of N.Y.*, 916 F. Supp. 2d 235, 241 (E.D.N.Y. 2012); *see also Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 353 (N.D.N.Y. 2008) ("No cause of action for false arrest will lie where the arrest was effected pursuant to an arrest warrant."), *aff'd*, 331 F. App'x 894 (2d Cir. 2009). Because "it is well established that there is no civil remedy available to a plaintiff arrested pursuant to a valid arrest warrant under [§] 1983," *Batista v. City of N.Y.*, No. 05-CV-8444, 2007 WL 2822211, at *6 (S.D.N.Y. Sept. 25, 2007), Plaintiff cannot state a claim for false arrest.

[10] Along these lines, the Amended Complaint merely references, without more, an unconstitutional "policy to admit bail[-]released [i]ndividuals into the [j]ails system . . . ." (Am. Compl. 65.) Yet, as discussed above, the Court need not heed such a conclusory allegation. *See Tieman*, 2015 WL 1379652, at *14 (holding that "conclusory" allegations "must be disregarded" (internal quotation marks omitted)).

"[P]rolonged post-arrest detention implicates the Fourth Amendment." *Mikulec v. Town of Cheektowaga*, 909 F. Supp. 2d 214, 227 (W.D.N.Y. 2012) (citing *Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007)); *see also Bryant v. City of N.Y.*, 404 F.3d 128, 136 (2d Cir. 2005) (holding that, in considering allegations of prolonged post-arrest detention, courts "turn to Fourth Amendment principles"); *cf. Ambrose v. City of N.Y.*, 623 F. Supp. 2d 454, 474 n.9 (S.D.N.Y. 2009) (noting that the "[p]laintiff's allegations of false arrest . . . state a claim *only* under the Fourth Amendment, and not under the Due Process Clause of the Fourteenth Amendment"). A jurisdiction that releases the accused or "provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein* [*v. Pugh*, 420 U.S. 103 (1975)]." *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). Thus, "a delay of less than 48 hours is presumptively valid." *Mikulec*, 909 F. Supp. 2d at 227.

Here, Plaintiff's Fourth Amendment rights were not violated. While stating the obvious, it must be noted that a roughly five-hour delay does not begin to approach the 48-hour rule articulated in *County of Riverside*.[11] Moreover, the Amended Complaint fails to put forth any of the impermissible reasons for a delay outlined by the Supreme Court. *See Cty. of Riverside*, 500 U.S. at 56 ("Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or

---

[11] Indeed, circuits courts that have addressed this issue have concluded that "[t]here is no constitutional right to speedy bail," *Fields v. Henry Cty.*, 701 F.3d 180, 185 (6th Cir. 2012); *cf. Collins v. Ainsworth*, 382 F.3d 529, 545 (5th Cir. 2004) ("There is no right to post bail within 24 hours of arrest."), and, more specifically, that "a delay of 'more than eight hours' in many situations would not be a deprivation of [the detainees'] rights," *Golberg v. Hennepin Cty.*, 417 F.3d 808, 812 (8th Cir. 2005); *see also Fields*, 701 F.3d at 185 (concluding that a 12-hour detention prior to bail release did not violate the plaintiff's constitutional rights; *Lund v. Hennepin Cty.*, 427 F.3d 1123, 1127 (8th Cir. 2005) (finding no constitutional violation on the basis of an alleged 12-hour delay in releasing a detainee from jail).

18

delay for delay's sake."). Rather, Plaintiff merely complains that the "[Jail] needlessly deprived [Plaintiff] of her liberty while refusing to accept bail and release [her] . . . ." (Am. Compl. 62 (first alteration in original)). To be clear, a roughly five-hour detention is not per se reasonable, but without factual allegations that Plaintiff was detained for longer than necessary, the presumption of validity applies. *See Mikulec*, 909 F. Supp. 2d at 227 ("[W]ithout evidence tending to show that officers detained [the plaintiff] for longer than necessary, the presumption of validity applies."). The Amended Complaint thus fails to sustain a claim for unlawful imprisonment.

b. Unconstitutional Conditions of Confinement

Plaintiff also alleges that she suffered unconstitutional conditions of confinement. To state such a claim, a detainee must meet the requirements of the deliberate indifference standard by alleging that "(1) objectively, the deprivation the [detainee] suffered was sufficiently serious that he [or she] was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind . . . , such as deliberate indifference to [detainee] health or safety.'" *Walker*, 717 F.3d at 125 (third alteration in original) (internal quotation marks omitted); *see also Randle v. Alexander*, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013) (applying deliberate indifference standard to conditions of confinement claim).[12] The objective element requires a prisoner to show "that the conditions of his [or her] confinement violate contemporary standards of decency." *Phelps v. Kapnolas*, 308

---

[12] "As opposed to deliberate indifference claims brought by post-conviction prisoners—which arise under the Eighth Amendment—claims for deliberate indifference brought by state pretrial detainees arise under the Fourteenth Amendment." *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 728 (W.D.N.Y. 2015) (internal quotation marks omitted). Nevertheless, the same legal standard governs conditions-of-confinement claims brought under the Eighth and Fourteenth Amendments. *See Caiozzo v. Koreman*, 581 F.3d 63, 70–72 (2d Cir. 2009) (collecting cases).

F.3d 180, 185 (2d Cir. 2002); *see also Anderson v. Coughlin*, 757 F.2d 33, 34–35 (2d Cir. 1985) (explaining that the objective element requires that the plaintiff demonstrate the conditions under which he or she was confined resulted "in unquestioned and serious deprivations of basic human needs" (internal quotation marks omitted)). As for the second element, namely, an accused prison official's subjective intent, "a plaintiff must show something more than mere negligence." *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (internal quotation marks omitted).

In the instant Action, Plaintiff fails to state a claim for unconstitutional conditions of confinement because the alleged deprivations were, objectively speaking, simply not serious enough to violate due process. The Amended Complaint asserts that the County "[d]eprived [Plaintiff] of food, water[,] and sanitary needs while in custody" but also makes clear that these conditions lasted only "for several hours." (Am. Compl. 89; *see also id.* at 11 (alleging Plaintiff "was without water or sanitary needs for several hours in custody"); *cf. id.* at 27 (alleging Plaintiff was at the Jail "waiting for nearly 5 hours").) As such, the short duration of these alleged deprivations leaves Plaintiff far short of satisfying the objective component of her claim. *See, e.g., Dillon v. City of N.Y.*, No. 12-CV-6746, 2013 WL 3776252, at *6 (S.D.N.Y. July 18, 2013) (holding that "a deprivation of access to shower and toothpaste for one morning . . . plainly do[es] not rise to the level of an objective [constitutional] violation"); *Beckford v. N.Y. State Office of Mental Health*, No. 06-CV-561, 2010 WL 1816689, at *12 (W.D.N.Y. May 3, 2010) (determining that a 22-hour deprivation of water and electricity does not rise to the level of a constitutional violation); *Jones v. Marshall*, No. 08-CV-562, 2010 WL 234990, at *3 (S.D.N.Y. Jan. 19, 2010) (noting "case law has established that temporary denial of a bathroom does not establish the existence of an objective injury for purposes of [a conditions-of-confinement] claim"); *Gardner v. Mental Health Unit of Sullivan Corr. Facility*, No. 07-CV-

5535, 2009 WL 1834382, at *2 (S.D.N.Y. June 17, 2009) (holding that "denying a prisoner the opportunity to shower for seven days and withholding toiletries, while uncomfortable, does not endanger an inmate's health and safety"); *Zimmerman v. Seyfert*, No. 03-CV-1389, 2007 WL 2080517, at *27 (N.D.N.Y. July 19, 2007) (holding that the plaintiff having "gone [11] hours without eating does not rise to the level of a constitutional claim"); *Bourdon v. Roney*, No. 99-CV-769, 2003 WL 21058177, at *11 (N.D.N.Y. Mar. 6, 2003) (report and recommendation) (holding that a three-hour period without bathroom privileges and water does not constitute a constitutional violation). Put simply, "several hours" without food, water, sanitary napkins, and access to bathroom facilities, while uncomfortable, does not rise to the level of a constitutional violation. *See Calhoun v. N.Y.C. Dep't. of Corr.*, No. 10-CV-182, 2014 WL 144659, at *6 (S.D.N.Y. Jan. 14, 2014) (report and recommendation) (holding that a "[§] 1983 claim will not lie for merely unpleasant prison conditions").

Plaintiff also asserts that she "had to endure pain from two injuries without treatment by the [J]ail . . . ." (Am. Compl. 28.) According to the Amended Complaint, these injuries involved her genital area, (*see id.* (alleging that "when [Plaintiff] complained of vaginal pain and burning[,] she was told she had to wait, allowing the infection to spread and become worse")), and her shoulder, (*see id.* ("The [J]ail also ignored [Plaintiff] about her shoulder hurting[,] later to find out the shoulder was ruptured with [a] possible fracture.")).[13] These alleged injuries, however, are not sufficiently serious under the objective prong of the deliberate indifference

---

[13] Three days after her arrest, Plaintiff sought treatment for her shoulder and "was advised there was no fracture, but there could be a tear or a sprain." (Am. Compl. Ex. C ("Medical Records") 37.) This fact further affirms that Plaintiff's shoulder injury was not sufficiently serious under deliberate indifference standard. *See Alster v. Goord*, 745 F. Supp. 2d 317, 337 (S.D.N.Y. 2010) ("Because hospital records reveal no fractures or dislocation, this injury is not sufficiently serious to meet the objective prong of the Eighth Amendment standard.").

standard. Rather than being of the nature of "death, degeneration, or extreme pain," *Mikulec*,

909 F. Supp. 2d at 223 (internal quotation marks omitted), Plaintiff's injuries, according to her

medical records, were treatable with medication and without any procedures, (*see* Medical

Records 30–31, 37; *see also* Am. Compl. 15 (noting she "was prescribed medications to be made

comfortable")). Plaintiff does not allege otherwise or that she suffered any permanent harm.

*See, e.g.*, *Sloane v. Borawski*, 64 F. Supp. 3d 473, 494 (W.D.N.Y. 2014) (finding that, even if the

defendant did ignore the claimed "broken ribs, ankle fracture[,] and lower right-side back

injury," the "plaintiff cannot meet the objective component" for a deliberate indifference claim);

*Dallio v. Hebert*, 678 F. Supp. 2d 35, 44 (N.D.N.Y. 2009) (holding that two black eyes, bruising

in the kidney area, kick marks, open lacerations, headache, and numbness did not constitute

serious medical need under the deliberate indifference standard); *Johnson v. Wright*, 477 F.

Supp. 2d 572, 575–76 (W.D.N.Y. 2007) (finding the prisoner's torn meniscus, for which he was

treated by surgery, was not "a 'serious medical need' for Eighth Amendment purposes"), *aff'd*,

324 F. App'x 144 (2d Cir. 2009).[14] Moreover, though she alleges "extreme pain far measured

above discomfort," (Am. Compl. 27 (internal quotation marks omitted)), "subjective complaints

of pain are not, in and of themselves, sufficient to establish the existence of a serious medical

need," *Goodwin v. Kennedy*, No. 13-CV-1774, 2015 WL 1040663, at *13 (E.D.N.Y. Mar. 10,

2015) (alterations and internal quotation marks omitted); *see also Evan v. Manos,* 336 F. Supp.

2d 255, 260 (W.D.N.Y. 2004) (holding that "an assertion of pain sensation alone,

---

[14] According to Plaintiff, the medical records attached to the Amended Complaint "reveal only the extreme ailments" she suffered. (Am. Compl. 27.) Given that these "extreme ailments" are insufficient to establish the existence of a serious medical need, the Court necessarily reaches the same conclusion as to Plaintiff's assertions that "[she] also suffered mental stress and anguish from pain and humiliation along with severe dehydration, nausea[,] and dizziness . . . ." (*Id.*)

unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment" (alterations and internal quotation marks omitted)).

Because none of Plaintiff's allegations satisfy the objective element of the deliberate indifference standard, the Amended Complaint fails to satisfy the subjective inquiry as well. *See Jabbar v. Fischer*, 683 F.3d 54, 58 (2d Cir. 2012) (holding that deliberate indifference "cannot be plausibly alleged" where the plaintiff failed to establish an excessive risk to inmates' safety for purposes of the objective prong). Thus, even apart from Plaintiff's failure to satisfy the requirements of *Monell*, the Amended Complaint cannot state a claim for unconstitutional conditions of confinement.

### c. Conspiracy

In addition, Plaintiff conclusorily alleges that the County, along with other defendants named in the Amended Complaint, "conspired to harm, defame, extort, humiliate, injure, harass[,] and victimize [her] under color of law." (Am. Compl. 74; *see also id.* at 24 (alleging that the County "conspired . . . to defame, kidnap, torture[,] and incarcerate [Plaintiff] with *no* valid cause of action before the East Fishkill Court or any other court").) With no further allegations of, let alone reference to, a conspiracy, the Court finds this claim to be insufficiently plead. *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (dismissing conspiracy allegations where they were found to be "strictly conclusory"); *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (holding that a plaintiff, in order to withstand a motion to dismiss, "must provide some factual basis supporting a meeting of the minds, such as that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end" as well as "some details of time and place and the alleged effects of the conspiracy" (internal quotation marks omitted)).

23

### III.  Conclusion

For the above reasons, the Court grants Moving Defendant's Motion To Dismiss with prejudice.[15] The Clerk of the Court is respectfully directed to terminate the pending Motion. (Dkt. No. 100).

SO ORDERED.

Dated:       February 26, 2016
             White Plains, New York

                                        _____
                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

---

[15] While "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once," *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (italics omitted); *see also McGee v. Pallito*, No. 10-CV-11, 2014 WL 360289, at *12 (D.Vt. Feb. 3, 2014) (noting that "[t]he Second Circuit has cautioned that district courts should not dismiss pro se complaints with prejudice without granting leave to amend *at least once*" (emphasis added) (italics omitted)), here the Court has already granted Plaintiff leave to amend, (*see* Dkt. No. 72). Moreover, "[t]he problem with [her] causes of action is substantive; better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Lastra v. Barnes & Noble Bookstore*, No. 11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012) (dismissing with prejudice a pro se complaint that was "not simply 'inadequately or inartfully pleaded,' but rather contain[ed] substantive problems such that an amended pleading would be futile"), *aff'd*, 523 F. App'x 32 (2d Cir. 2013).