UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHELE ELLEN SCALPI,                                    HON. KENNETH M. KARAS

                 Plaintiff,

     -against-

POLICE OFFICER TINA AMORIM,                              Case No.: 14-CV-02126 (KMK)(PED)

              Defendant.

------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## ON BEHALF POLICE OFFICER TINA AMORIM

---

                 Yours, etc.,

                 DRAKE LOEB, PLLC
                 *Attorneys for Defendant,*
                 *POLICE OFFICER TINA AMORIM*
                 555 Hudson Valley Avenue, Suite 100
                 New Windsor, New York 12553
                 Tel. No.: (845) 561-0550

OF COUNSEL:

Adam L. Rodd, Esq.

# TABLE OF CONTENTS

Page

Table of Cases & Authorities……………………………………………………………..ii

ARGUMENT:

I.      INTRODUCTION……………………………………………………………………….2

II.     SUMMARY OF UNDISPUTED FACTS…………………………………………........2

III.    PROCEDURAL POSTURE OF CASE AND RELEVANT PLEADED
        ALLEGATIONS……………………………………………………………………......3

IV.     SUMMARY JUDGMENT STANDARD…………………………………………...…7

V.      THE PLAINTIFF'S CONSTITUTIONAL CLAIMS LACK MERIT AND
        SHOULD BE DISMISSED………………………………………………………...…7

VI.     OFFICER AMORIM IS ENTITLED TO QUALIFIED IMMUNITY………………14

CONCLUSION……………………………………………………………………………18

i

## TABLE OF CASES & AUTHORITIES

Cases:

Ambrose v. Korines, No. 03–Civ–0411, 2005 WL 1962027 (E.D.N.Y. Aug. 9, 2005)

Biswas v. City of New York, 973 F. Supp. 2d 504, 529 (S.D.N.Y. 2013)

Burke v. Cicero Police Dep't, 2010 U.S. Dist. LEXIS 31414, 2010 WL 1235411 (N.D.N.Y.2010)

Dallow v. Prudential Residential Services, L.P., 22 F.3d 1219 (2d Cir. 1994)

Esmont v. City of New York, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005)

Ferebee v. City of New York, No. 15-CV-1868 (PAC), 2017 WL 2930587, at *8 (S.D.N.Y. July 6, 2017)

Finnegan v. Fountain, 915 F.2d 817, 822–23 (2d Cir.1990)

Fontana v. Haskin, 262 F.3d 871, 880 (9th Cir. 2001)

Garcia v. N.Y. State Police Investigator Aguiar, 138 F.Supp.2d 298, 303–04 (N.D.N.Y.2001)

Golden v. County of Westchester, 2012 WL 4327652 (S.D.N.Y.)

Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989)

Gutierrez v. City of New York, No. 13 CIV. 3502 JGK, 2015 WL 5559498, at *7 (S.D.N.Y. Sept. 21, 2015)

Jackson v. City of New York, 939 F. Supp. 2d 219 (E.D.N.Y. 2013)

Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)

Lemmo v. McKoy, No. 08–CV4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011)

Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995)

Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)

Morales v. City of New York, No. 13-cv-7667 (RJS), 2016 WL 4718189, at *4 (S.D.N.Y. Sep. 7, 2016)

Pascual v. Fernandez, 2013 WL 474292 (S.D.N.Y. 2013)

ii

Perlesshi v. Cty. Of Westchester, No. 98 Civ. 6927 (CM), 2000 U.S. Dist. LEXIS 6054, at *18 (S.D.N.Y. Apr. 24, 2000)

Phillips v. DeAngelis, 571 F.Supp. 2d 347, 353 (N.D.N.Y. 2008)

Richardson v. New York City Health and Hospitals Corp., 05 Civ. 6278, 2009 WL 804096, at *10 (S.D.N.Y. Mar.25, 2009)

Richardson v. Providence, No. 09–CV–4647 (ARR)(LB), 2011 WL 3701887, at *7 (E.D.N.Y. Aug. 20, 2011)

Romano v. Howarth, 998 F.2d 101, 105 (2d Cir.1993)

Schy v. State of Vermont, 2 F. App'x 101, 103 (2d Cir. 2001)

Smith v. City of New York, 2010 WL 3397683, *10 (2010)

United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)

Vogeler v. Colbath, No. 04 Civ. 6071 (LMS), 2005 U.S. Dist. LEXIS 44658, at *31-35 (S.D.N.Y. Oct. 6, 2005)

Wernick v. Federal Reserve Bank of New York, 91 F.3d 379 (2d Cir. 1996)

Wright v. City of Waterbury, No. 3:07-CV-306 CFD, 2011 WL 1106217, at *7 (D. Conn. Mar. 23, 2011)

Statutes:

42 U.S.C. §1983

FRCP 12(b)(6)

FRCP Rule 56 and 56(c)

Vehicle and Traffic Law §511

DRAKE LOEB^PLLC
555 Hudson Valley Avenue, Suite 100, New Windsor, New York 12553
Phone: 845-561-0550

## I.   INTRODUCTION

The plaintiff Michele Scalpi (hereinafter "plaintiff") commenced this lawsuit in March of 2014, and initially asserted multiple wide-ranging claims against multiple defendants. Ultimately, and following the service of various motions to dismiss, all of the plaintiff's claims, against all of the defendants, were dismissed, except for the plaintiff's allegations asserting an unreasonable seizure, and the use of excessive force, by Police Officer Maria Amorim (s/h/a Police Officer Tina Amorim, and hereinafter "Officer Amorim") relating to an arrest which occurred on March 17, 2014.  For the reasons set forth in the instant moving papers, the remaining claims against Officer Amorim are without merit, and an Order granting Officer Amorim summary judgment is warranted based on the record presented herein, and the governing law.

## II.   SUMMARY OF UNDISPUTED FACTS

The plaintiff was arrested for speeding and for driving without a license on February 5, 2011 in the Town of East Fishkill by a Police Officer Tarpey of the Town of East Fishkill Police Department. Exhibit "E."[1]  During the course of the prosecution of those charges in the Town of East Fishkill Town Court, the plaintiff failed to appear in Town Court for a required appearance on April 24, 2013.  Accordingly, on that date, Judge Romig of the Town of East Fishkill Town Court issued a Bench Warrant authorizing the plaintiff's arrest. Exhibit "F."

Thereafter, on March 17, 2014, in Columbia County, the plaintiff was again stopped and arrested for speeding and driving without a license by Police Officer Seresky of the New York State Park Police.  Exhibit "G."  A background data check performed by Police Officer Seresky during this traffic stop revealed numerous prior suspensions, as well as the open Bench Warrant

---

[1] All Exhibits referred to in this Memorandum of Law are included in the document entitled "Exhibit List Submitted by Defendant Police Officer Tina Amorim," submitted herewith.

issued by Judge Romig.  Exhibit "G."  Arrangements were accordingly made to have the plaintiff transferred to the Town of East Fishkill Police Department pursuant to Judge Romig's Bench Warrant.  Exhibit "G."

Shortly after 3 p.m. on March 17, 2014, Officer Amorim met Police Officer Seresky at the James Baird State Park (located in Pleasant Valley, New York) to arrest the plaintiff in accordance with the Judge Romig's Bench Warrant.  Exhibit "H" and "J."  At the James Baird State Park, Officer Amorim conducted a pat-down search of the plaintiff, and applied handcuffs, prior to placing the plaintiff in Officer Amorim's assigned police vehicle.  Officer Amorim then drove the plaintiff from the James Baird State Park to the Town of East Fishkill Police Department.  Upon arrival at the Town of East Fishkill Police Department, Officer Amorim removed the handcuffs from the plaintiff in order to allow the plaintiff to use the bathroom.

As indicated below, the sole remaining claims of the plaintiff against Officer Amorim assert that: (a) the manner in which Officer Amorim performed a pat-down search of the plaintiff at the James Baird State Park amounted to an unreasonable seizure and/or the use of excessive force, and (b) Officer Amorim used excessive force in the manner in which she removed handcuffs from the plaintiff at the Town of East Fishkill Police Department.

## III. PROCEDURAL POSTURE OF CASE AND RELEVANT PLEADED ALLEGATIONS

The plaintiff filed her instant lawsuit with this Court on March 26, 2014.  Exhibit "A." With respect to the plaintiff's initially asserted factual claims, the plaintiff's original Complaint alleged, inter alia, that: she was harassed, threatened, and stalked by persons from the Dutchess County Sheriff's Office in the 1990's (Exhibit "A," ¶¶ 14 to 20); she was pulled over, and then charged for driving without a license in February of 2011, but that it was wrongful for any party to require the plaintiff to  carry a valid driver's license when driving (Exhibit "A," ¶¶ 23 to 34);

when she was arrested on March 17, 2014, she was subjected to a rough and excessive search by Officer Amorim (Exhibit "A," ¶¶ 41 to 47); she was not provided with *Miranda* warnings when arrested on the March 17, 2014 date (Exhibit "A," ¶ 49); on the March 17, 2014 date she experienced pain because she was "cuffed behind the back for a long period of time" (Exhibit "A," ¶¶ 54 to 57); she was subjected to the twisting of her left hand with force by Officer Amorim when handcuffs were removed on the March 17, 2014 date, resulting in left shoulder pain (Exhibit "A," ¶¶ 59 to 65); when she used the bathroom on March 17, 2014 at the Town of East Fishkill Police Department she noticed her "menstrual cycle happening," but was not provided with a sanitary napkin, and used toilet paper instead  (Exhibit "A," ¶¶ 69 to 74); after she was transferred from the Town of East Fishkill Police Department to the custody of the New York State Troopers she was denied water and food (Exhibit "A," ¶¶ 84 to 87); she complained to the New York State Troopers that she "had toilet paper stuck to my gentiles (sic) because East Fishkill Police would not provide a sanitary napkin," and was also denied a sanitary napkin by the New York State Troopers (Exhibit "A," ¶¶ 88 to 89); when she was transferred to the Orange County Jail, she complained that she experienced extreme burning because she "had toilet paper in my pants all day as I was denied sanitary needs from all police," and was again denied a sanitary napkin (Exhibit "A," ¶¶ 102 to 103); she experienced pain on March 19, 2014 when she appeared at the Town of East Fishkill Town Court, and left the Town Court before her case was called (Exhibit "A," ¶¶ 127 to 151); and that she received medical evaluations for her claimed shoulder injury on March 19 and 20, 2014 (Exhibit "A," ¶¶ 151 to 160).

The plaintiff's original Complaint asserted the violation her Constitutional rights against the East Fishkill Police Department, Officer Amorim, the Dutchess County District Attorney, District Attorney Grady, Assistant District Attorney Knapp, Town Judge Romig, the County of

Dutchess, the New York State DMV, the Orange County Jail, New York State Troopers, and the State of New York. Exhibit "A," ¶¶ 172 to 189.

Following the filing of the plaintiff's original Complaint, and in response to various pre-motion letters submitted by counsel for the various defendants, this Court issued a Scheduling Order, on May 19, 2014, setting forth a briefing schedule for the defendants' motions of dismiss. Dkt. No. 38. The various defendants named in the plaintiff's original Complaint accordingly filed motions to dismiss the original Complaint. Dkt. Nos. 40 to 55. The plaintiff, in response to these motions, thereafter requested permission to amend her Complaint, and said request was granted by the Court. Dkt. Nos. 72 and 74.

The plaintiff's Amended Complaint was filed on December 31, 2014. Exhibit "B." See also, Dkt. No. 75. With respect to the claims relating to and asserted against Officer Amorim specifically, the plaintiff's Amended Complaint alleges, similar to her original Complaint, that: Officer Amorim conducted a rough and excessive search of the plaintiff, with contact made to her genital area, before Officer Amorim transported the plaintiff to the Town of East Fishkill Police Department (Exhibit "B," ¶¶ 44 to 47); the plaintiff experienced pain in her shoulders because she was "cuffed behind the back for a long period of time" (Exhibit "B," ¶¶ 56 to 57); Officer Amorim twisted the plaintiff's left hand with force while removing handcuffs causing the plaintiff left shoulder pain (Exhibit "B," ¶¶ 59 to 65); and the plaintiff noticed her "menstrual cycle happening" when she went to use the bathroom, and accordingly used toilet paper, instead of a sanitary napkin, because Officer Amorim indicated that she did not have a sanitary napkin (Exhibit "B," ¶¶ 69 to 74). The plaintiff's Amended Complaint goes on to allege, as relevant to the claims asserted against Officer Amorim, that: when she was transported to the NYS Troopers Barracks after her release from the Town of East Fishkill Police Department, she advised that she

had toilet paper stuck to her genitals because she was denied a sanitary napkin (Exhibit "B," ¶ 88); upon her subsequent transfer from the NYS Troopers Barracks to the Orange County Jail, she explained to Orange County Jail personnel that she experienced vaginal burning because "I had toilet paper in my pants all day as I was denied sanitary needs from all police" (Exhibit "B," ¶¶ 99 to 103); and that she saw medical providers for issues relating to vaginal pain and shoulder pain on March 18, 19 and 20, 2014 (Exhibit "B," ¶¶ 120 to 126, and 151 to 161).

The plaintiff's Amended Complaint named as defendants the Town of East Fishkill, Officer Amorim, Sergeant Fields, Dutchess County District Attorney Grady, Dutchess County Assistant Attorney Knapp-Pasquale, Town Judge Romig, the County of Dutchess, the New York State DMV Commissioner Barbara Fields, the County of Orange, Governor Cuomo and Steven K. Patterson as defendants, and asserted that the defendants violated a multitude of her Constitutional rights. Exhibit "B." Thereafter, and following the filing of motions to dismiss the plaintiff's Amended Complaint, the Court issued several Opinions and Orders which dismissed all of the plaintiff's claims against Governor Cuomo and New York State DMV Commissioner Fiala (Dkt. No. 127), Patterson (Dkt. No. 128), the County of Dutchess, Grady and Knapp/Pasquale (Dkt. No. 130), Orange County (Dkt. No. 131), and the Town of East Fishkill, Fields and Romig (Dkt. No. 129; Exhibit "C"). With respect to Officer Amorim, the Court dismissed all claims asserted against her sounding in false arrest, a *Miranda* violation, and the alleged unconstitutional conditions of confinement (i.e. not providing water or sanitary napkins; failing to provide privacy while using the bathroom; and failing to provide medical attention). However, the Court did not dismiss the claims relating to Officer Amorim's alleged unreasonable search of the plaintiff prior to being transported back to the Town of East Fishkill Police Department, or Officer Amorim's alleged use of excessive force while removing

handcuffs upon arrival at the Town of East Fishkill Police Department (Dkt. 129; Exhibit "C").
In accordance with the supporting Affidavits and other materials submitted with this motion, an
Order granting Officer Amorim summary judgment pursuant to FRCP Rule 56 is warranted
under the non-disputed facts and governing law presented herein.

## IV.     SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if all of the submissions taken together "show that
there is no genuine issue as to any material fact and that the moving party is entitled to judgment
as a matter of law." FRCP 56(c). On a motion for summary judgment, the moving party bears
the initial burden of demonstrating the absence of a genuine issue of material fact. Dallow v.
Prudential Residential Services, L.P., 22 F.3d 1219 (2d Cir. 1994). Once the moving party
establishes its prima facie showing of entitlement to summary judgment, the burden shifts to the
non-movant to come forward with a sufficient evidentiary material indicating the existence of a
genuine issue of material fact for trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,
475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In this regard, the mere existence of a
scintilla of evidence in support of the non-moving party's position will be insufficient for
purposes of defeating a motion for summary judgment, as there must be evidence on which the
jury could reasonably find for the non-movant. Wernick v. Federal Reserve Bank of New York,
91 F.3d 379 (2d Cir. 1996).

## V.     THE PLAINTIFF'S CONSTITUTIONAL CLAIMS LACK MERIT AND SHOULD BE DISMISSED

As referenced above, on the March 17, 2014 date, the plaintiff was arrested by Officer
Amorim pursuant to Town Judge Romig's April 24, 2013 Bench Warrant authorizing the
plaintiff's arrest. Exhibit "H." In this regard, this Court has already held that the subject arrest
of the plaintiff on the March 17, 2014 date was valid, and dismissed the plaintiff's asserted "false

DRAKE LOEB PLLC
555 Hudson Valley Avenue, Suite 100, New Windsor, New York 12553
Phone: 845-561-0550

arrest" claim against Officer Amorim.  Exhibit "C;" see also, Phillips v. DeAngelis, 571 F.Supp. 2d 347, 353 (N.D.N.Y. 2008)("No cause of action for false arrest will lie where the arrest was effected pursuant to an arrest warrant"), aff'd 331 F.App'x 894 (2d. Cir. 2009).

Claims of an unreasonable seizure or excessive force occurring during an arrest implicate the protections of the Fourth Amendment, which prohibit unreasonable searches and seizures. Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989)("[w]here, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person"). In the circumstance of a valid arrest, the law is well-settled that a search of the person arrested does not violate the Fourth Amendment.  See, United States v. Robinson, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973) (holding that in the case of a lawful custodial arrest, a full search of arrestee's person is not only an exception to the warrant requirement of the Fourth Amendment but is also a "reasonable" search under that Amendment).

## (A)   SEARCH AT JAMES BAIRD STATE PARK

In this case, the plaintiff initially claims that she was subjected to an unreasonable seizure and excessive force by Officer Amorim during the course of Officer Amorim's pat-down search of the plaintiff at the James Baird State Park. Exhibit "B," ¶¶ 44 to 47. As set forth and detailed in Officer Amorim's Affidavit, prior to placing the plaintiff in her assigned police vehicle, she conducted a pat-down search of the plaintiff which consisted of patting down both of the plaintiff's legs (on the outside of the plaintiff's jeans), and then, patting-down and sliding her hands over the back and front of the plaintiff's hoodie/sweatshirt to check for weapons and

concealed items. Amorim Affidavit, ¶¶ 14 to 17. Officer Amorim's Affidavit establishes that the pat-down search transpired over the course of just several seconds, and at no time did she hit, strike or make contact with the plaintiff's genital area, or touch or grab the plaintiff's breasts or bra area with the front of her hands, during her brief and non-intrusive pat-down. Amorim Affidavit, ¶¶ 14 to 16. The lack of contact in this regard, and the brief nature of the pat-down, was confirmed by Police Officer Seresky. Seresky Affidavit, ¶¶ 9 and 10. Further, no mention of any vagina trauma, or the hitting or striking of the plaintiff's genital area, is anywhere indicated in the plaintiff's medical records. See, Exhibit "M."

At the outset, even crediting the plaintiff's claim that Officer Amorim's hand made contact with the plaintiff's genital area during the pat-down search, or, that Officer Amorim "grabbed" the plaintiff's breasts during this search, these allegations simply do not rise to the level of severity necessary to constitute an actionable claim for damages under the Fourth Amendment. As indicated above, in the face of an undisputed valid arrest, Officer Amorim was authorized to conduct a full search of the plaintiff incident to that arrest. United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (when police effect a lawful arrest, they may conduct a full search of the arrestee's person without any additional justification); see also, United States v. McCargo, 464 F.3d 192, 201 (2d Cir. 2006)("[t]he justification for the pat-down is not that the suspect is reasonably suspected of being armed; it is rather a matter of sound police administration: police officers should be certain before transporting members of the public, whom they do not know, that none of them is armed"). And the courts have repeatedly recognized that contact with an arrestee's breasts or genital area during a pat-down is not alone sufficient to serve as a predicate for a civil claim for damages against a law enforcement official under Section 1983. See, Golden v. Cty. of Westchester, 2012

DRAKE LOEB PLLC
555 Hudson Valley Avenue, Suite 100, New Windsor, New York 12553
Phone: 845-561-0550

WL 4327652, at *5–6 (S.D.N.Y. 2012)(holding that plaintiff's claim that officer, during a pat-down search, touched the  plaintiff's breasts and genital area was insufficient to make out a constitutional violation where search was minimally intrusive, and conducted above the clothing); Pascual v. Fernandez, 2013 WL 474292, at *6 (S.D.N.Y. 2013)(pat-down search incident to arrest involving the touching, by a male officer, of a female arrestee's breasts, buttocks and inner thigh area, is not sufficient to give rise to a constitutional violation); Wright v. City of Waterbury, 2011 WL 1106217, at *7 (D. Conn. 2011)(claim that officer palm cupped arrestee's groin area on two occasions during frisk does not rise to the level of unreasonableness required for a Fourth Amendment violation); Garcia v. N.Y. State Police Investigator Aguiar, 138 F.Supp.2d 298, 303–04 (N.D.N.Y.2001) (dismissing female plaintiff's Fourth Amendment sexual assault claims against a male police officer who "cupped" the plaintiff's crotch and breasts during a pat frisk); Fontana v. Haskin, 262 F.3d 871, 880 (9th Cir. 2001)("…not every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment. Some bodily intrusions may be provably accidental or de minimis and thus constitutionally reasonable").

To the extent that the plaintiff claims that the impact she felt to her genital area during Officer Amorim's pat-down search constituted the use of "excessive force," any such allegation remains non-viable on the record presented herein. First, and as noted above, a minor and incidental contact with an arrestee's genital area, as alleged here, is insufficient to make out a Fourth Amendment violation. See, Burke v. Cicero Police Dep't, 2010 WL 1235411 (N.D.N.Y.2010) (dismissing claim where male defendant "patt[ed] and squeeze[ed]" plaintiff's legs and "breasts on down").

Moreover, even if the allegations of the plaintiff could, arguendo, be characterized as

more than minor or incidental, there was simply no injury resulting from Officer Amorim's

search at the James Baird State Park of sufficient severity to support an actionable Fourth

Amendment violation. As indicated in the Milford Hospital records, the plaintiff reported no

"trauma" or "force" at all to her vaginal area; to the contrary, the plaintiff simply reported a

burning sensation in her vaginal area resulting from the use of toilet paper instead of a sanitary

napkin for her menstrual period. Exhibit "M." To the extent that the plaintiff's vaginal injury

resulted from the lack of a sanitary napkin - as the plaintiff's medical records, and *her own*

*pleadings* indicate - any such claim is non-viable since this Court has already held that the failure

to provide the plaintiff with a sanitary napkin was legally insufficient to show a viable conditions

of confinement claim. Exhibit "C." And, even if it is assumed, for the sake of argument, that the

plaintiff could show that Officer Amorim made contact with the plaintiff's genital area that

caused her pain, the plaintiff conceded that her pain entirely resolved within a couple of days of

the incident. Exhibit "L," at p. 97, lines 13 to 16. The transient and temporary nature of this

minor pain is legally insufficient to make out a viable excessive force claim. Lemmo v. McKoy,

2011 WL 843974, at *5 (E.D.N.Y. 2011) ("[T]he Second Circuit and district courts in the

Circuit recognize the concept of 'de minimis ' injury and, when the injury resulting from alleged

excessive force falls into that category, the excessive force claim is dismissed"); See also, Schy

v. State of Vermont, 2 F. App'x 101, 103 (2d Cir. 2001)("...not every infliction of pain reaches

the level of a constitutional violation").

## (B)   REMOVAL OF HANDCUFFS AT TOWN OF EAST FISHKILL POLICE DEPARTMENT

The plaintiff's claim relating to the alleged use of excessive force by Officer Amorim

during the course of removing handcuffs at the police station also fails to constitute a viable

Constitutional wrong. Here, the incident in question is depicted on police surveillance video,

and same clearly establishes that Officer Amorim simply raised the plaintiff's left arm to facilitate removing a handcuff from the plaintiff's left wrist, a maneuver that cannot be fairly characterized as involving the application of "force," much less "excessive force." Exhibit "Q," Amorim Affidavit, ¶¶ 20 and 21.

In any event, even assuming, for the sake of argument, that the maneuver at issue did involve the application of some degree of force, and even further assuming that the maneuver did cause some level of pain, the maneuver at issue plainly does not rise to the level of "excessive force" necessary to establish an actionable Fourth Amendment violation. See, Ferebee v. City of New York, 2017 WL 2930587, at *8 (S.D.N.Y. 2017)("Merely lifting the arms of a handcuffed arrestee is not an unreasonable use of force"); Perlesshi v. Cty. Of Westchester, 2000 U.S. Dist. LEXIS 6054, at *18 (S.D.N.Y. 2000) (cuffing an arrestee and raising his arms to purposefully cause momentary pain is not excessive force as a matter of law); Vogeler v. Colbath, 2005 U.S. Dist. LEXIS 44658, at *31-35 (S.D.N.Y. 2005) (granting summary judgment for defendants where plaintiff was lifted off the ground by his arms while handcuffed); see also, Gutierrez v. City of New York, 2015 WL 5559498, at *7 (S.D.N.Y. 2015)("[e]xcessive force claims require 'serious or harmful,' not 'de minimis' use of force"); Biswas v. City of New York, 973 F. Supp. 2d 504, 529 (S.D.N.Y. 2013)(same).

Further, regardless of how the actions of Officer Amorim are characterized, no "excessive force" claim is viable because the plaintiff cannot show that Officer Amorim's actions resulted in any injuries, much less any injuries of sufficient severity to establish an actionable Fourth Amendment violation. Although the plaintiff did present to the St. Luke's Cornwall Hospital emergency room two (2) days after the incident in question, x-rays taken of the plaintiff's left shoulder revealed entirely normal findings, without evidence of an injury.

Exhibit "N." Further, and in accordance with the narrative report and moving affidavit of Dr. Bradley Wiener - a board-certified orthopedic surgeon - the plaintiff's left shoulder was not maneuvered by Officer Amorim in a manner that caused any injury to the plaintiff's shoulder, and, there was no objective evidence supporting the existence of any injury at all resulting from the actions of Officer Amorim on March 17, 2014 date. Dr. Wiener Affidavit, ¶¶ 7 to 9. The absence of an injury, or of an injury of sufficient severity resulting from Officer Amorim's removal of handcuffs, precludes the viability of the plaintiff's "excessive force" claim. Lemmo v. McKoy, supra.

A claim that law enforcement officers used excessive force in the course of an arrest is analyzed under the Fourth Amendment reasonableness standard. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In applying this standard, the law recognizes that " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id. at 396, 109 S.Ct. 1865 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)). To establish a Fourth Amendment "excessive force" violation sufficient to support an award of damages under §1983, a plaintiff must show that the actions complained of in fact caused an injury of sufficient severity to support the claim. Morales v. City of New York, No. 13-cv-7667 (RJS), 2016 WL 4718189, at *4 (S.D.N.Y. Sep. 7, 2016)("[a] successful excessive force claim requires sufficient evidence to establish that the alleged use of force was serious or harmful enough to be actionable"); Jackson v. City of New York, 939 F. Supp. 2d 219 (E.D.N.Y. 2013)(to succeed on a claim under § 1983 for excessive force, a plaintiff must present sufficient evidence to establish that the alleged use of force is objectively sufficiently serious or harmful enough to be actionable).

The law is well-settled that minor, temporary or de minimus injuries are not sufficient to

support an actionable Fourth Amendment "excessive force" claim. See, Romano v. Howarth, 998 F.2d 101, 105 (2d Cir.1993)("A de minimis use of force will rarely suffice to state a Constitutional claim"); Lemmo v. McKoy, 2011 WL 843974, at *5 (E.D.N.Y. 2011 ("…the Second Circuit and district courts in the Circuit recognize the concept of "de minimis' injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed"). Here, the record evidence establishes, at best, that the plaintiff, who had been handcuffed behind her back for approximately an hour after her initial arrest, may have experienced some minor pain or discomfort resulting from Officer Amorim's raising of the plaintiff's left arm to remove handcuffs; however, the nature of this type of "injury" is just not of sufficient severity to support a claim of Constitutional dimension. See, Smith v. City of New York, 2010 WL 3397683, *10 (2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity") (collecting cases); see also, Richardson v. New York City Health and Hospitals Corp., 05 Civ. 6278, 2009 WL 804096, at *10 (S.D.N.Y. Mar.25, 2009) (injuries held to be de minimis for purposes of defeating excessive force claims include short-term pain, swelling, and bruising).

## VI.    OFFICER AMORIM IS ENTITLED TO QUALIFIED IMMUNITY

To the extent that the plaintiff, for the reasons noted above, cannot establish that Officer Amorim's actions amounted to either an "unreasonable seizure" or the use of "excessive force," Officer Amorim is necessarily entitled to qualified immunity for her conduct. See, Richardson v. Providence, 2011 WL 3701887, at *7 (E.D.N.Y. 2011) ("In light of the court's conclusion that [the defendant] did not use excessive force against plaintiff, the court necessarily also holds that he is entitled to qualified immunity with respect to this conduct."). Nevertheless, even assuming, arguendo, that it might be concluded that what transpired on the March 17, 2014 arrest date

amounted to a Fourth Amendment violation (and, as noted above, no such violation occurred), Officer Amorim is entitled to qualified immunity for her conduct.

The defense of qualified immunity is available to a law enforcement officer sued on claims sounding in "excessive force." Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995); see also, Finnegan v. Fountain, 915 F.2d 817, 822–23 (2d Cir.1990)("…the qualified immunity defense is generally available against excessive force claim").

Police officers are entitled to qualified immunity in § 1983 suits brought against them in their individual capacities if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The law recognizes that a governmental official is entitled to "breathing room" in carrying out her job functions, and will be protected from actions and decisions that are objectively reasonable, even if it turns out that same were mistaken in terms of an implicated Constitutional principle. Messerschmidt v. Millender, 565 U.S. 535, 132 S.Ct. 1235, 1249, 182 L.Ed. 2d 47 (2012) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments")(internal quotation marks omitted).  In this regard, the qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)(internal quotation marks omitted).  If police officers of reasonable competence could disagree as the legality of specified actions in their particular context, the protections afforded by the qualified immunity defense apply. Burgess v. Town of Wallingford, 569 F. App'x 21, 24 (2d Cir. 2014).

The courts have described qualified immunity as a forgiving standard, which protects all but the plainly incompetent and those who knowingly violate the law.  Provost v. City of

Newburgh, 262 F. 3d 146, 160 (2d Cir. 2001). Only where an officer's judgment is "so flawed that no reasonable officer would have made a similar choice," is the denial of qualified immunity appropriate. (Provost, supra 262 F. 3d at 160).

In this case, there is no viable basis upon which it can be said that Officer Amorim should have understood that her actions in conducting a pat-down search of the plaintiff at the James Baird State Park, and in removing handcuffs from the plaintiff at the Town of East Fishkill Police Station, violated the plaintiff's Constitutional rights under the Fourth Amendment. More particularly, to the extent that Officer Amorim's pat-down search involved contact to the plaintiff's genital area or her breasts, as alleged by the plaintiff, the nature of the search described simply does not amount to an unreasonable one in accordance with the Fourth Amendment, nor would all competent police officers perceive it as so. See, Golden v. Cty. of Westchester, 2012 WL 4327652, at *5–6 (S.D.N.Y. 2012)(even assuming that police officer touched plaintiff's breast and genital area during pat-down, a constitutional violation was not established where search was minimally intrusive); Wang v. Vahldieck, 2012 WL 119591, at *10 (E.D.N.Y. 2012)(even crediting plaintiff's account that police officer reached under plaintiff's shirt during search and touched plaintiff's skin, same does not rise to a violation of constitutional proportion); Wright v. City of Waterbury, 2011 WL 1106217, at *7 (D. Conn. 2011)(even if Officer Martinez's cross-gender search of Wright was to be determined a constitutional violation, the Court finds that Officer Martinez and Officer Allen are protected by qualified immunity. Officer Martinez's search was objectively reasonable—in the course of a pat down search, regardless of gender, it is not unreasonable that a police officer's hands would make contact with an arrestee's groin area and Wright does not claim that Officer Martinez's search of his groin area involved any other inappropriate conduct).

DRAKE LOEB™
555 Hudson Valley Avenue, Suite 100, New Windsor, New York 12553
Phone: 845-561-0550

Moreover, although the plaintiff alleges contact to her vaginal area during Officer Amorim's pat-down search at the James Baird State Park, the records (and the plaintiff's own pleadings for that matter) indicate that whatever vaginal pain the plaintiff experienced was not due to trauma, but instead, to the claimed failure – on the part of several law enforcement agencies (not just Officer Amorim) - to provide the plaintiff with a sanitary napkin. See, Exhibit "B," ¶¶ 69 to 74, 88 to 89, 102 to 103; 106 to 109; Exhibit "M." See, Adedeji v. Hoder, 935 F. Supp. 2d 557, 574 (E.D.N.Y. 2013)("… in an excessive force claim, to recover compensatory damages a plaintiff must prove that any injury suffered was proximately caused by the unreasonable force at issue…"). In any event, regardless of the cause of the plaintiff's vaginal discomfort, the plaintiff conceded that her entire treatment for same consisted of a single visit to the emergency room the day after her arrest, and that her pain thereafter entirely resolved within 48 hours. Exhibit "L," p. 113, lines 20 to 25, and p. 97, lines 13 to 16. The plainly de minimis nature of this so-called injury is, as noted above, insufficient to support an actionable excessive force claim. See, Cunningham v. Rodriguez, 2002 WL 31654960, at *4 (S.D.N.Y. 2002)("… the plaintiff must show that the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable"); Sachs v. Cantwell, 2012 WL 3822220, at *14 (S.D.N.Y. 2012)("… on an excessive force claim a plaintiff must present sufficient evidence to establish that the alleged use of force is objectively sufficiently serious or harmful enough to be actionable. A de minimis use of force will rarely suffice to state a Constitutional claim")(citation and internal quotation marks omitted); Lemmo v. McKoy, 2011 WL 843974, at *5 (E.D.N.Y. 2011) ("[T]he Second Circuit and district courts in the Circuit recognize the concept of 'de minimis' injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed").

With respect to Officer Amorim's removal of handcuffs from the plaintiff at the Town of East Fishkill Police Department, there is no viable basis to support the allegation that Officer Amorim should have understood that her actions were in violation of any Fourth Amendment requirements. As indicated above, Officer Amorim's removal of the plaintiff's handcuffs is depicted on video surveillance, and the fact that Officer Amorim lifted the plaintiff's arm to enable her to unlock the handcuff from her left wrist is not an action that can be fairly characterized as the use of force, much less excessive force, of Constitutional dimension. Exhibit "Q." And, even if Officer Amorim's maneuver could be characterized as the application of force within the meaning of the Fourth Amendment, the complained of action did not constitute excessive force, nor was there a basis for Officer Amorim, much less all officers of reasonable competence, to have understood that these actions were unconstitutional in accordance with existing law. See, Ferebee v. City of New York, 2017 WL 2930587, at *8 (S.D.N.Y. July 6, 2017)("Merely lifting the arms of a handcuffed arrestee is not an unreasonable use of force"); Perlesshi v. Cty. Of Westchester, 2000 U.S. Dist. LEXIS 6054, at *18 (S.D.N.Y. Apr. 24, 2000) (cuffing an arrestee and raising his arms to purposefully cause momentary pain is not excessive force as a matter of law).

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the instant motion, made on behalf of Police Officer Amorim, for summary judgment dismissing all claims against her, pursuant to FRCP Rule 56, be granted in its entirety.

Dated: New Windsor, New York
    August 11, 2017

                    Yours, etc.,

                    DRAKE LOEB PLLC

            By: _____

                    ADAM L. RODD (AR-3484)
                    *Attorneys for Defendant,*
                    *POLICE OFFICER AMORIM*
                    555 Hudson Valley Avenue
                    Suite 100
                    New Windsor, New York 12553
                    Tel. No.: (845) 561-0550

DRAKE LOEB^PLLC
555 Hudson Valley Avenue, Suite 100, New Windsor, New York 12553
Phone: 845-561-0550